STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

PEOPLE OF THE STATE OF
MICHIGAN,

         Plaintiff,

-v-                        Case No. 07-024733-01 &
                                   07-024733-02

KYRON DARELL BENSON and
PAULA RENAI BENNETT,

         Defendants.

_____/

JURY TRIAL
VOLUME I

         Proceedings had before the
Honorable MICHAEL J. CALLAHAN, Judge of the Third Judicial
Circuit of Michigan, 703 Frank Murphy Hall of Justice,
Detroit, Michigan 48226, on May 6, 2008.

APPEARANCES:

                 MS. MOLLY KETTLER
                 Assistant Prosecuting Attorney

                   On behalf of the Plaintiff


                 MR. RAYMOND BURKETT
                 Attorney at Law

                   On behalf of Def. Benson


                 MR. WALTER A. WHITE
                 Attorney at Law

                   On behalf of Def. Bennett

                 Jeffrey B. Goldsmith
                 Official Court Reporter
                 CSMR-0037

INDEX

WITNESS                                                    PAGE

None

EXHIBITS                    MARKED              ADMITTED

None

May 6, 2008

Detroit,                Michigan

P R O C E E D I N G S

\*        \*        \*

THE COURT:   The People of the State of Michigan versus Kyron Benson and Paul Bennett.

MS. KETTLER: Good morning your Honor, Molly Kettler on behalf of the People.

MR. WHITE: Walter White on behalf of Paula Bennett.

MR. BURKETT: Good morning your Honor, Raymond Burkett on behalf of Kyron Benson.

THE COURT: We're going to draw one jury today and one jury tomorrow and start the trial on Thursday.   So Ms. Kettler, who's going to go first?

MS. KETTLER: Well your Honor, if I could have just literally one minute to talk to Mr. White, I can maybe make this more expeditious.   I have been here since eight thirty and I haven't had a chance to talk to him.   He's just gotten here.   It's a possibility that there will only be one jury.

THE COURT: Alright, I'll give you five minutes.

MS. KETTLER: Okay, it's not necessary, Judge. Apparently she's decided not to do that so we're letting him go.

THE COURT: Oh good, okay.   Who do you want first?

MS. KETTLER: I would prefer to do Mr. Benson's. He's the first defendant.   I'd prefer to do his jury first.

3

THE COURT: Bring out Mr. Benson, please.  And as to the Bennett matter, tomorrow morning we will draw that jury at eight thirty a.m.

                    -   -   -

MS. KETTLER: There is one matter that only relates to Mr. Benson.  And that is the preliminary exam judge ordered that there be no contact between family members of the Defendant and witnesses in this case.  The grandmother of the Defendant has had contact with one of our witnesses in this case and I would ask the Court to sternly admonish everyone once again that that is not appropriate.

THE COURT: Well how are the people known to one another?

MS. KETTLER: They weren't before this.  The person, the way this -

THE COURT: So this grandmother went out of her way to disobey that judge's order?

MS. KETTLER: That's my perception.

THE COURT: Are you asking me to enforce the order?  I have lots of room in the county jail?

MS. KETTLER: Yes your Honor.

THE COURT: Where is she?

MS. KETTLER: It does not appear that she's here today.  I would ask -

THE COURT: Well when she comes in, you can ask me

4

to show cause her for contempt.   If I find there's contempt, I'll jail her.

MS. KETTLER: Okay.  I would ask the Court to allow me to issue a subpoena for her to appear then so that she will, for that purpose.

THE COURT: Sure.

MR. BURKETT: You really don't have to do that because if you tell me you want her here, I'm going to make sure she's here.

MS. KETTLER: Well then I would ask that that happen.

THE COURT: Please, tomorrow morning at eight thirty.

THE COURT: Who was the district judge?

MS. KETTLER: That was Judge Oakley.

THE COURT: And this is on the record, his admonishment?

MS. KETTLER: I'm going to check to be sure about that but I know I brought it up at that time.

THE COURT: Okay, well eight thirty tomorrow morning, we'll deal with the grandmother.

MS. KETTLER: Thank you.

THE COURT: And do we have a jury there?

THE BAILIFF: They're on their way, Judge.

THE COURT: On their way.  When we draw the jury, everyone will have to leave the courtroom because there won't be

5

enough places for the jurors.

        -   -   -

      THE COURT: People of the State of Michigan versus
Kyron Darell Benson.  Counsel.

      MS. KETTLER: Good morning your Honor, may it please
the Court, on behalf of the People of the State of Michigan,  I'm
assistant prosecutor Molly Kettler.

      MR. BURKETT: Good morning your Honor, I'm Raymond
Burkett and I'm representing the Defendant in this case.

      MR. WHITE: Could we have a side bar conference,
please?

      THE COURT: Sure.

        -   -   -

      THE COURT: Ladies and gentlemen, my name is Judge
Michael Callahan and you've been brought here possibly to serve
as jurors in a criminal case.  Fourteen of you will be selected.
I want to outline the schedule of this trial.  You will come to
understand that there are two defendants in the trial and this
morning I will draw a jury for Mr. Benson.  The jury will return
on Thursday morning at nine a.m. and the case will try Thursday
of this week between the hours of nine and one and then next week
Monday, Tuesday, Wednesday and Thursday between the hours of nine
and one.

      Eventually if you're in the jury box, I will ask
you if that presents an unreasonable burden for any of you.  So

jury selection for Mr. Benson will be this morning and the jury will not be here tomorrow but then will return on Thursday morning to begin the trial.   Tomorrow we will draw the jury for the other defendant who is not present in court and once that jury is selected, then both juries will together hear the case.

I know that jury duty may be a new experience for some of you.   It is one of the most serious duties members in a free society are asked to perform.   Our system of self government cannot exist without jury duty.   It is an important part of the case.   The law says both a person accused of a crime and the defendant have a right to be tried not by one person but by a jury of twelve impartial people.   Jurors must be free as humanly possible from bias, prejudice or sympathy for either side.

Each side in a trial is entitled to jurors who keep open minds until the time comes to decide the case.   During jury selection the lawyers and I will ask questions of you.   We need to find out if you have any opinions or personal experiences that might influence you for or against the prosecution, the defendant or any witnesses.   One or more of these things could cause you to be excused in this particular case even though you may otherwise be suitable as a juror in a different case.

The questions may probe deeply into your attitudes, beliefs and experiences but are not meant to be an  unreasonable prying into your private life.   The law requires we get this information so an impartial jury may be chosen.   If you do not

8

hear or understand a question, say so.  If you do understand it, answer it truthfully and completely.  Do not hesitate to speak freely about anything you believe we should know.

You may be excused in one of two ways.  Either I may decide there's a legal reason why you cannot serve or the lawyers, without giving any reason for doing so, may excuse a limited number of you.  This is known as the peremptory challenge. The law gives each side the right to excuse a certain limited number of jurors in this way.  If you are excused, do not feel bad nor take it personally.  As I explained, there may simply be something that causes you to be excused in this particular case. And now to begin the process  known as the voir dire, I'll ask all of you to stand and raise your right hands to swear or affirm an oath.

(Whereupon the jurors were sworn by the Clerk)

THE COURT: Now the names of fourteen of you will be called.  If you follow the direction of the officers, you'll be seated in seats one through fourteen.

THE CLERK: Edwin Fowler, F-O-W-L-E-R, seat number one.  Amy Duncan, D-U-N-C-A-N, seat number two.  Clarissa Smith, seat number three.  Nancy Dryja, D-R-Y-J-A, pronounce the last name.

JUROR #13: Dryja.

THE CLERK: Seat number four, thank you.  Annette  Smith, seat number five.  Vanessa Aldridge, A-L-D-R-I-D-G-E, seat number six.  Louis

9

Herber, H-E-R-B-E-R, seat number seven.   Pronounce your last name, please.

JUROR #23: Herber.

THE CLERK:  Frank Raidl, R-A-I-D-L, seat number eight. Pronounce the last name, please.

JUROR #33: Raidl.

THE CLERK: Kenneth Lindlbauer, L-I-N-D-L-B-A-U-E-R.

JUROR #27: Lindlbauer.

THE CLERK: Thank you, seat number nine.   George Chestnut, C-H-E-S-T-N-U-T, seat number ten.   Kristine Piper, P-I-P-E-R, seat number eleven. Jill Kulchinsky, K-U-L-C-H-I-N-S-K-Y, pronounce your name.

JUROR #25: Kulchinsky.

THE CLERK: Thank you, seat number twelve.   Colleen McQueen, M-C-Q-U-E-E-N, seat number thirteen.   Julie Brown, seat number fourteen.

THE COURT: Ladies and gentlemen, I'm going to begin by introducing some of the persons that you will hear from in this case beginning with Ms. Kettler who is the assistant prosecutor.   If you'd introduce yourself, the officer in charge and persons you intend to call.

MS. KETTLER: Thank you your Honor.   Good morning, ladies and gentlemen.   As I indicated before, I am Molly Kettler.   I'm the assistant prosecutor responsible for this case.   With me is Detective Toth.   He's the officer in charge.   You'll see him helping me sometimes inside the courtroom, sometimes outside.   The following are witnesses we may call, we won't call all of them.   Some are in the alternative so don't panic.   Dr. Somerset or another representative of the Wayne County Medical Examiner's Office, Virginia McCluire or Fred Watson, Officer

10

Adam Byrd, Heaven Kindall, Officer Jablonski, Officer Luke, Officer Sharp, Officer Byrne, a Ron Hayes, Minor Rodriguez, Breanna Kandler, Jessica Fritz, Kathleen McIntyre, Rita Merry, Richard Wren, Corporal Gannon, Susan DuFresne, Detective Toth, Christina Simon, Mother of Kathleen McIntyre, who's another witness, Jessica Bennett, Jon Paul Steffes, Officer Cayce, Officer Lange, Officer Egerer, a custodian of records from the Wayne County Jail, Detective Bryan White from the Wayne County Prosecutor's Office, a chemist from the Michigan State Police Lab, Rob Rayer, a firearms examiner from the Michigan State Police Lab, Trooper Guy Nutter, Mark Larvaidan, I'm sorry, Mike Larvaidan, Bruce Hensley, Chris Lay, Corporal McGlynn, an ordinance officer Lynch, Corporal Czinski and Trooper Wade Higgason from the Wayne, or I'm sorry, Michigan State Police Lab.   Thank you.

THE COURT: Ladies and gentlemen, do any of you think you know any of the people who have been introduced either in person or in the reading of the witness list, raise your hand.   Mr. Burkett represents the Defendant.   If you'd again introduce yourself and your client and the person with you at the table.

MR. BURKETT: Good morning everyone.   As this Honorable Court has told you, my name is Raymond Burkett and my client here is Mr. Kyron Benson.   Also assisting me is Patricia Carroll (ph) from my office.

THE COURT: Do any of you think you know any of those three persons, raise your hand.   I'm going to begin by reading to you an Information.   An Information is filed in every criminal case and it's virtually the only way someone is charged with a crime in Michigan, I'm sure you've heard of grand juries but normally the defendant is charged with a crime by way of an Information filed by the Wayne County Prosecutor.

This Information charged the People of the State of Michigan

11

versus Kyron Darell Benson on the date of October 6, 2007 at 30072 Utah Street in Sumpter Township, that the Defendant did deliberately and with intent to kill and with premeditation kill and murder one Stephanie McClure.   In count two, the Defendant is charged with possession of a firearm by a felon; that is he did possess a firearm while ineligible to do so because he had been convicted of a felony punishable and the requirements for regaining eligibility to carry a weapon had not been met.

And in count three, the Defendant is charged with having in his possession a handgun at the time he committed or attempted to commit the felony of murder premeditated or being a felon in possession of a firearm.   The Defendant has pled not guilty to these charges.   You should clearly understand that the Information I have just read to you is not evidence.   An Information is read in every criminal trial so that the defendant and the jury may hear the charges.

You must not think it is evidence of the defendant's guilt or that he must be guilty simply because he has been charged.     Have any of you ever served on a jury before, raise your hand?

And that's Mr. Raidl?

JUROR #33: Yes.

THE COURT: I mean Mr. Raidl.

JUROR #33: Raidl.

THE COURT: Raidl, and how long ago, sir?

JUROR #33: About six, seven years.

THE COURT: Was the case criminal or civil?

JUROR #33: Criminal.

THE COURT: And did the jury reach a verdict?

JUROR #33: I don't know, I was excused.

12

THE COURT: Anyone else, any jury service?   Do any of you have any health problems that prevent you serving on this jury?   Do any of you have any religious beliefs that prevent you serving on this jury?   I indicated the days for the trial.   This jury will be selected this morning and then you will, the jury will return Thursday morning between the hours of nine and one and then Monday, Tuesday, Wednesday and Thursday of next week between the hours of nine and one.   Does that present an unreasonable burden for any of you, raise your hand?   And Ms. Aldridge, what's the problem?

JUROR #1: It may not be a problem for the Court but it is a problem for me.   I'm a teacher and it's difficult for me to be away from my students that many days.

THE COURT: Well where do you teach?

JUROR #1: Detroit Public Schools.   I teach, I'm the master teacher.   We don't have, I mean I have coverage but it's not proper coverage for my class.

THE COURT: And what grade do you teach?

JUROR #1: Pre K.

THE COURT: I'm sorry?

JUROR #1: Pre-kindergarten.

THE COURT: Ms. Piper, what's the problem?

JUROR #32: I'm a full time student.

THE COURT: Where are you a student?

JUROR #32: Wayne State.

THE COURT: And the classes don't end for the summer?

JUROR #32: I am a full time student.

13

THE COURT: A full time -

JUROR #32: During the spring and summer.

THE COURT: What do you study?

JUROR #32: Pharmacy.

THE COURT: And all of the classes are in the morning?

JUROR #32: It's different every week.

THE COURT: Ms. Brown, what's the problem?

JUROR #5: I'm the president of a company.   I'm scheduled to go out of town from Friday to Tuesday next week.

THE COURT: Well can that trip be postponed?   Can the business -

JUROR #5: I don't know but I will try.

THE COURT: So that if you serve on this case, you have to be here during the time I outlined.   You'll be able, or you think you'll be able to reschedule your trip out of town?

JUROR #5: I will try.

THE COURT: I'll excuse Ms. Aldridge and Ms. Piper.

THE CLERK: Kelly Fannon, F-A-N-N-O-N, seat number six.   Pronounce the last name, please.

JUROR #16: Fannon.

THE CLERK: Allen Bradley, seat number eleven.

THE COURT: Ms. Fannon, do you think you know or have heard of any of the people who have been introduced?

JUROR #16: No.

THE COURT: Have you ever served on a jury before?

14

JUROR #16: Yes.

THE COURT: How long ago?

JUROR #16: About fifteen years ago.

THE COURT: Civil or criminal?

JUROR #16: Civil.

THE COURT: Did the jury reach a verdict?

JUROR #16: No.

THE COURT: And you heard the time of the trial as I've outlined with this jury beginning Thursday morning, does that present an unreasonable burden for you?

JUROR #16: No.

THE COURT: And Mr. Bradley, have you ever been on a jury before?

JUROR #4: Yes.

THE COURT: How long ago, sir?

JUROR #4: Twelve years.

THE COURT: And was it a civil or criminal case?

JUROR #4: Criminal.

THE COURT: Did the jury reach a verdict?

JUROR #4: Yes.

THE COURT: And same question about the length of the trial, can you be with us during the time I outlined?

JUROR #4: Yes.

THE COURT: Do either of you, Mr. Bradley or Ms. Fannon, have an religious beliefs that prevent you serving?

15

JUROR #4: No.

JUROR #16: No.

THE COURT: Any health problems that prevent you serving?

JUROR #4: No.

JUROR #16: No.

THE COURT: I'm now going to read to you three principles of law that as jurors you must follow because whatever I tell you including these three principles state the law that you must follow if you are on this jury.   Every person accused of a crime is presumed to be innocent.   This means you must start with the presumption the defendant is innocent.   This presumption continues with the defendant throughout the trial and entitles the defendant to a verdict of not guilty unless you are satisfied beyond a reasonable doubt that he is guilty.

Every crime is made up of parts called elements.   The prosecutor is required to prove every element of a crime beyond a reasonable doubt.   The defendant is not required to prove his innocense or do anything.   If you find the prosecutor has not proven every element of a crime beyond a reasonable doubt, then you must find the defendant not guilty.

A reasonable doubt is a fair, honest doubt growing out of the evidence or lack of evidence.   It is not an imaginary or possible doubt but a doubt that is based on reason and commons sense.   A reasonable doubt is just that, a doubt that is reasonable after a careful and considered examination of the facts and circumstances of this case.

You will hear in this case from witnesses who are police officers. Would anyone seated there believe a police officer more than a civilian simply because they're a police officer, raise your hand?   Have any of you ever been the

16

victim of a violent crime, raise your hand?  I'm now going to ask some individual questions of each juror beginning with Mr. Fowler.   Mr. Fowler, what do you do for a living?

JUROR #17: Security supervisor at Greektown Casino.

THE COURT: Are you married or single?

JUROR #17: Married.

THE COURT: What does your wife do?

JUROR #17: She's a nurse.

THE COURT: And what town do you live in?

JUROR #17: I live in Detroit, Michigan.

THE COURT: Ms. Duncan, what do you do for a living?

JUROR #15: I'm an inventory planner at Federal Mogul Corporation.

THE COURT: Are you single or married?

JUROR #15: I'm married.

THE COURT: What does your husband do?

JUROR #15: He's a mechanical engineer at Toyota.

THE COURT: And what town do you live in?

JUROR #15: Plymouth.

THE COURT: Ms. Smith, what do you do for a living?

JUROR #39: I'm a server at Red Lobster.

THE COURT: Single or married?

JUROR #39: Single.

THE COURT: What town do you live in?

JUROR #39: Wayne.

17

THE COURT: Ms. Dryja, what do you do for a living?

JUROR #13: I'm a kindergarten teacher.

THE COURT: And are you married or single?

JUROR #13: I'm married.

THE COURT: What does your husband do?

JUROR #13: He's a auto body repairman.

THE COURT: And what town do you live in?

JUROR #13: Dearborn Heights.

THE COURT: Ms. Smith, what do you do for a living?

JUROR #38: Child care.

THE COURT: And are you married or single?

JUROR #38: Single.

THE COURT: What town do you live in?

JUROR #38: I live in Detroit.

THE COURT: Ms. Fannon, what do you do for a living?

JUROR #16: I'm a school librarian.

THE COURT: Are you single or married?

JUROR #16: Married.

THE COURT: What does your husband do?

JUROR #16: A business owner.

THE COURT: And what town do you live in?

JUROR #16: Grosse Pointe Park.

THE COURT: Mr. Herber, what do you do for a living?

JUROR #23: Mechanic.

THE COURT: Single or married?

18

JUROR #23: Single.

THE COURT: What town do you live in?

JUROR #23: Garden City.

THE COURT: Mr. Raidl, what do you do for a living?

JUROR #33: I repair appliances for Montgomery Wards.

THE COURT: Single or married.

JUROR #33: Married.

THE COURT: What town do you live in?

JUROR #33: Allen Park.

THE COURT: And what does your wife do?

JUROR #33: She's, computers for Oakwood Hospital.

THE COURT: Mr. Lindlbauer, what do you do for a living?

JUROR #27: Automotive engineer.

THE COURT: Are you single or married?

JUROR #27: Married.

THE COURT: What does your wife do?

JUROR #27: Teacher's aide.

THE COURT: And what town do you live in?

JUROR #27: Livonia.

THE COURT: Mr. Chestnut, what do you do for a living?

JUROR #11: Chrysler Corporation.

THE COURT: Are you married or single?

JUROR #11: Single.

THE COURT: What town do you live in?

JUROR #11: Flat Rock.

19

THE COURT: Mr. Bradley, what do you do for a living?

JUROR #4: GM technician.

THE COURT: Married or single?

JUROR #4: Single.

THE COURT: What town do you live in?

JUROR #4: Detroit.

THE COURT: Ms. Kulchinsky, what do you do for a living?

JUROR #25: Graphic designer.

THE COURT: Married or single?

JUROR #25: Married.

THE COURT: What does your husband do?

JUROR #25: Residential painter.

THE COURT: And what town do you live in?

JUROR #25: Redford.

THE COURT: Ms. McQueen, what do you do for a living?

JUROR #30: Office manager.

THE COURT: And what kind of a business concern?

JUROR #30: Dairy.

THE COURT: Married or single?

JUROR #30: Single.

THE COURT: What town do you live in?

JUROR #30: Livonia.

THE COURT: Ms. Brown, you indicated that you own or are the
CEO of a business. What is the business?

JUROR #5: Manufacturing.

THE COURT: Married or single?

JUROR #5: Married.

THE COURT: And what does your husband do?

JUROR #5: He's a lawyer.

THE COURT: And for whom does he practice law?

JUROR #5: He practices with a company.

THE COURT: So he's house counsel for whatever the business is, yes?

JUROR #5: Yes.

THE COURT: Let me followup on that for a minute.   You understand that the only law you can apply is the law that I tell you.

JUROR #5: Yes.

THE COURT: So you can't discuss, in fact, you can't even discuss the case with your husband but you certainly can't discuss the law of this case with your husband, you understand that?

JUROR #5: Yes sir.

THE COURT: And what town do you live in?

JUROR #5: I live in Dearborn.

THE COURT: Ms. McQueen, did I ask you what town you lived in?

JUROR #30: Yes, Livonia.

THE COURT: Okay, thank you.   Now the lawyers will have a chance to ask you some questions beginning with Ms. Kettler.   Go ahead.

MS. KETTLER: Thank you your Honor.   Ladies and gentlemen, first I just want to say that I apologize in advance if any of the questions seem

21

intrusive.   That's not my intent.   I'm just trying to make sure I can get a fair jury so I apologize if it seems that way.   Let me start out by asking first of all any of you ever been arrested for or convicted of a crime, raise your hand, please.   Anyone?   Okay, Mr., I told you it would be embarrassing and intrusive but it's not my intent.   Mr. Raidl, what was the nature of the crime?

JUROR #33: I said a bad word in a police station.

MS. KETTLER: Okay, has that -

THE COURT: Is that right after you forgot if you were married?

JUROR #33: Before.

MS. KETTLER: What were you arrested for?

JUROR #33: I was coming to bail out my brother and they told me, he was going in the service the next day.   And the police officer gave me a hard time.   And I said I didn't have to take it.

MS. KETTLER: What did they charge you with?

JUROR #33: I don't know, it was Diversion or something like that.

MS. KETTLER: Okay, let me ask you this.   Do you think you were treated fairly?

JUROR #33: No.

MS. KETTLER: Truly look into your heart and tell me, can you set that experience aside completely and not let it affect your role as a juror in this case?

JUROR #33: Yes.

MS. KETTLER: Okay, do you have a bad attitude about all police because of that?

22

JUROR #33: No.

MS. KETTLER: If I tell you none of these officers are from, what did you say, Dearborn Police Department?

JUROR #33: Allen Park.

MS. KETTLER: Allen Park.   We don't have anybody from Allen Park.   You won't judge all these police officers by that incident, correct?

JUROR #33: Correct.

MS. KETTLER: And Ms. McQueen, apologize.

JUROR #30: OUIL.

MS. KETTLER: Okay, do you think you were treated fairly?

JUROR #30: Yes.

MS. KETTLER: Okay.   And so nothing about that experience would affect your ability to be a juror in this case?

JUROR #30: No.

MS. KETTLER: Okay.   And who else, I'm sorry?

JUROR #25: Drunk driving.

MS. KETTLER: Okay, do you think you were treated fairly?

JUROR #25: Yes.

MS. KETTLER: Okay.   Do you think anything about that experience would affect your ability to be a fair and impartial juror in this case?

JUROR #25: No.

MS. KETTLER: Who else?   Mr. Bradley, what was that that you were arrested for?

JUROR #4: Driving under the influence.

MS. KETTLER: Okay, do you think you were treated fairly?

23

JUROR #4: Yes.

MS. KETTLER: Okay.   Do you think anything about that experience would affect your ability to be a fair juror in this case?

JUROR #4: No.

MS. KETTLER: Do you have a bad attitude about the police because of it?

JUROR #4: No.

MS. KETTLER: Okay, fair enough.   Anyone else?   Okay, anyone, you know, something even lesser than being arrested or convicted of a crime, anybody have a bad experience with the police or aware of a close friend or family member having a bad experience with the police or with some other aspect of the criminal justice system, some kind of a court case?   Okay, Mr. Fowler, what was the nature of that?

JUROR #17: Just harassment.

MS. KETTLER: By?

JUROR #17: The police.

MS. KETTLER: Okay, was that in the course of your life as a civilian or outside of work or in the course of your working in security at Greektown?

JUROR #17: Outside of work.

MS. KETTLER: Okay, are there multiple incidents of that?

JUROR #17: Yes, it has been.

MS. KETTLER: Okay, and do you think that, what police department did that happen with?

JUROR #17: Detroit Police.

MS. KETTLER: Do you think that has caused, how many times

24

would you say that you feel like you've been harassed or treated unfairly by the police?

JUROR #17: I'm forty years old, twenty years of my life.

MS. KETTLER: Okay, fair enough.  Do you think that you can set that aside and be fair in this case if you have to listen to police witnesses?

JUROR #17: Honestly I don't.

MS. KETTLER: Okay, fair enough.  Anyone else, unpleasant experiences, close friends, family members?  Ms. Brown, Mrs. Brown?

JUROR #5: Yes.

MS. KETTLER: What was the nature of the experience?

JUROR #5: When we first come here as a refugee, my brother was arrested by the policeman in the park.

MS. KETTLER: Okay, alright, and obviously I'm not going to ask you if you think that was fair because obviously it's not.  Do you think that you could put that experience aside and not hold it against police officers in this case?

JUROR #5: Yes.

MS. KETTLER: Okay, can you tell me that it wouldn't affect your ability to be fair in this case?

JUROR #5: It would not.

MS. KETTLER: Okay, anyone else?  Okay, thank you.  Another question I want to ask you about is one of the things that it's going to be important for you to do in this case is you're going to listen to witnesses give testimony under oath and one of your jobs will be to evaluate whether you think those people are telling the truth or not, witness credibility.  Would you say that, would you agree with me, Mr. Bradley, that some people in this world are better than

25

other people in this world at being able to tell if people are telling them the truth?

JUROR #4: Would I agree with you?

MS. KETTLER: Yes, some people are good at it, some people are kind of gullible, would you agree with that?

JUROR #4: Yes.

MS. KETTLER: Do you think you're one of the people in this world that is good at telling whether people are telling the truth or not?

JUROR #4: About average.

MS. KETTLER: About average, okay.   What about you, Mr. Chestnut, do you agree that some people are better at that than others?

JUROR #11: Yes.

MS. KETTLER: Are you one of the people that's good at telling if people are telling the truth or not?

JUROR #11: No, I'm not that good.

MS. KETTLER: You're not good at it?   Would you do your best to try to do that if you're picked for the jury?

JUROR #11: I'd give it a shot.

MS. KETTLER: Okay, well isn't it something you have to do in your everyday life?

JUROR #11: Yes.

MS. KETTLER: Okay, do you have kids?

JUROR #11: They're -

MS. KETTLER: I'm sorry?

JUROR #11: She's grown.

MS. KETTLER: Okay, well when she was growing up, did she fib

26

to you sometimes?

JUROR #11: Yes.

MS. KETTLER: Okay, and you could tell if she was fibbing to you most of the time, right?

JUROR #11: That's my daughter.

MS. KETTLER: Right, but my question is not what you should do about it or whatever or if it makes her a bad person, you could tell when she was fibbing to you, right?

JUROR #11: Yes, I could.

MS. KETTLER: Okay, alright, fair enough.   Ms. Smith, what about you, do you think you're good at that?

JUROR #38: I think I'm okay with it.

MS. KETTLER: Okay, by the way, let me kind of digress from this for a minute.  With a show of hands, who has kids whether they're young or grown at this point?  Okay, almost everybody.  I want each and every one of you to look at this defendant and see that he is a relatively young man.  Who among you think that, you've heard the nature of the case, who among you thinks that, you know, I may hear this evidence and I may be convinced beyond a reasonable doubt that this young man committed these crimes but I may feel like, my goodness, he is so young and this is such a serious crime.  Who thinks that might enter into their mind if they're picked to be a juror in this case?  It's human, right?  Okay.  Despite the fact that you are human, and I see you nodding your head in agreement, Ms. Smith, it's because you're human, that may enter into your mind, correct?   But just because something enters into your mind doesn't mean you have to act on it, is that right?

27

JUROR #38: Right.

MS. KETTLER: Can you tell me that feeling that way, you would be able to put that aside and do your job as a juror regardless of the fact that you feel bad for the young man?

JUROR #38: That's correct.

MS. KETTLER: Okay, and you're certain about that?

JUROR #38: Yes.

MS. KETTLER: And what about you, Mr. Fowler, you raised your hand also?

JUROR #17: Yeah, when I heard the nature of the crime -

MS. KETTLER: Okay.

JUROR #17: I thought about, you know, he's a young guy and it's his life.

MS. KETTLER: Would you be able to put sympathy aside and do your job as a juror if you're selected?

JUROR #17: Probably not.

MS. KETTLER: Probably not.

JUROR #17: I don't think I would be a good juror.

MS. KETTLER: Okay, why do you think you wouldn't be a good juror?

JUROR #17: Cause just the way I felt when I heard the nature of the crime, you know, I just don't think I would be a good juror.

MS. KETTLER: The nature of the crime made you feel bad for him cause he's a young man?

JUROR #17: Yeah, actually it did.

28

MS. KETTLER: Did the nature of the crime make you feel bad for the girl who was killed?

JUROR #17: It did.

MS. KETTLER: Okay, but this would trump your feelings for, the defendant would trump your feelings for the victim?

JUROR #17: I wouldn't want to be a juror.

MS. KETTLER: Well I understand that but I'm asking you would your feelings for the defendant trump your feelings for the victim?

JUROR #17: It would be, you know, it wouldn't be fair is what I'm saying so that's why I wouldn't be a good juror.

MS. KETTLER: Okay, who else raised their hand, I think Mr. Chestnut?  Okay, it's going to enter in your mind.  You're human, he's a young man, correct?

JUROR #11: Yes.

MS. KETTLER: Would you, nonetheless be able to put that aside and do your job as a juror based only on the evidence and the law and not with regard to sympathy?

JUROR #11: Yes, I will.

MS. KETTLER: Okay, did anybody else raise their hand? Okay, thank you.  Who watches, show of hands, CSI, Law and Order, shows like that?  Okay, almost everybody.  All of you who raised your hand that you watched those programs, do you think, raise your hand if you think they're realistic?  Okay, Ms. Brown, do you think parts of them are realistic and parts of them are maybe entertainment?

JUROR #5: I think that it's realistic because it's based on real

29

life.   You read in the news what happens.

MS. KETTLER: Okay, if you are picked to be a juror in this case and the Judge instructs you you should decide this case only on the law and the evidence, okay, let's assume that.   And you go back in that jury room to deliberate, do you think it would be proper for you to think back on something that you've seen on tv and say, well what about that or what about this as it regards to this case?   I saw say, I mean I'm just going to say something ridiculous, I saw on tv that they could track bloody cat prints away from a scene or something.   Why didn't they do that here?   Would that be proper?

JUROR #5: It would not be proper.

MS. KETTLER: Okay.   So you're convinced you could put everything you've seen on tv aside and only on the law and evidence in this case, is that correct?

JUROR #5: Yes.

MS. KETTLER: Okay, thank you.   Anybody else, probably nobody's going to raise their hand because you know I'm going to ask questions but anybody else think they're realistic?

Okay, is everybody who raised their hand that they watch those kind of shows, can you commit to me and I need you to answer out loud that you can put that aside and decide this case only on the law and evidence in this case?

(Whereupon the jurors answered yes)

MS. KETTLER: Can you do that, all of you?   Anybody think they'll have a problem doing that?   Okay.   The Judge has already mentioned and it will become very clear to you as we go through this case that there are two defendants in this case.   There are going to be times in this trial where only, if you're

picked for a juror, to be a juror, you will hear evidence at the same time as the other jurors.   Maybe I'm not saying this very clearly.   Sometimes you're not going to hear everything the other jury says and vice versa.   And the Judge is going to instruct you that you're not supposed to concern yourself with evidence that's presented to just the other jury.

Who thinks that they'd have a difficult time putting that out of their mind and they'd be wondering, you know, wonder what that other jury has been hearing?   Who thinks that's going to enter into their mind, that they're going to wonder about that?   Probably human to be curious about it, anybody?   Okay, can everybody commit that they can decide this case based only on what your jury that you're sitting on here and not speculate or wonder about the other defendant?   Can everybody commit to that?   I need to hear you out loud.

JURORS: Yes.

MS. KETTLER: Thank you.   The Judge asked you if any of you had been a victim of a violent crime.   I want to expand that a little bit and ask whether anybody you know as far as friends or family members have been victims of violent crimes, okay.   Let me take you one at a time starting with number one, Mr. Fowler.   Who was that person to you?   What was the relationship?

JUROR #17: I had two brothers that was murdered.

MS. KETTLER: Okay, and did you, was someone arrested?

JUROR #17: Nobody, no.

MS. KETTLER: In either case?

JUROR #17: Neither case.

MS. KETTLER: Okay, and do you think that gives you sort of a negative outlook about the criminal justice system as a whole?

31

JUROR #17: Yes, it does.

MS. KETTLER: Okay, who else.   Okay, Ms. Smith?

JUROR #39: One of my best friends was raped.

MS. KETTLER: Okay.   Did you participate or, by that I mean did you attend the trial or anything like that?

JUROR #39: No.

MS. KETTLER: Did you talk with her other friends about how the, was there a trial, first of all?

JUROR #39: Yeah.

MS. KETTLER: Okay, did you talk about what happened and kind of keep up with what happened?

JUROR #39: I knew he was put away.   I mean he got sentenced to jail but we didn't discuss what happened there.

MS. KETTLER: Do you have a positive view of the criminal justice system as a result of that?

JUROR #39: Yes.

MS. KETTLER: Okay.   Ms. Dryja, what was that person's relationship to you?

JUROR #13: My husband.

MS. KETTLER: What was the crime?

JUROR #13: My husband was involved in a shooting, robbery at his place where he worked in December of '07.

MS. KETTLER: Okay, and was someone arrested?

JUROR #13: Not that we know of.

MS. KETTLER: Okay, do you feel that the police have failed you

32

in that sense or do you feel that they've done everything they could?

JUROR #13: They contacted us several times.  They contacted the owner.  I think they did the best they could do.

MS. KETTLER: Okay.  So nothing about that will affect your ability to be a fair juror in this case?

JUROR #13: No.

MS. KETTLER: Okay.  Who else, I'm sorry, Ms. Smith?

JUROR #38: My nephew.

MS. KETTLER: What was the crime?

JUROR #38: He was murdered.

MS. KETTLER: Was someone arrested?

JUROR #38: Yes.

MS. KETTLER: And was that person convicted?

JUROR #38: Yes.

MS. KETTLER: And do you feel, do you have reasonably, obviously the whole situation, there's nothing to be happy about but are you satisfied that the criminal justice system worked for you and your family in that case?

JUROR #38: It worked very well.

MS. KETTLER: Okay, anyone else besides Ms. Brown?  Okay, Ms. Brown?

JUROR #5: My secretary's sister was killed.  She was in the news, the CVS store by the police.  So we talked about that.

MS. KETTLER: Okay, and have you talked about, I know that's kind of an ongoing case so we don't want to say too much but do you have any bad feelings about the police or prosecutors about the way that has been handled?

33

JUROR #5: I do.

MS. KETTLER: Alright, and everybody's absolutely entitled to have their opinion.   I have no problem with that.   Do you think that you could keep that from affecting you as a juror in this case?   In other wards, you're not going to hold it against me that in putting this case on that maybe the police or prosecutors, you don't feel like they've done a good job with regard to that case?

JUROR #5: No.

MS. KETTLER: You won't hold it against me?

JUROR #5: No.

MS. KETTLER: Okay.   The Judge instructed you about, briefly about what elements of a crime are, that elements of the crime are all the things I have to prove, which the Judge will define for you, to prove this case beyond a reasonable doubt.   Who here believes by a show of hands that when this case is done, if I have proven this case beyond a reasonable doubt, if I've proven all the elements beyond a reasonable doubt that that means every question you have will be answered?   Does that make sense?   Let me ask you, let me ask you, Ms. Dryja, do you think, are those the same thing?   Do I have to answer every question you could possibly have about this situation in order for you to find that all of the elements have been proven beyond a reasonable doubt?

JUROR #13: Yes.

MS. KETTLER: Every question you might have, even if it's about something that's not an element of the crime?

JUROR #13: No, if it's not an element of the crime, no.

MS. KETTLER: Okay, so you're willing to accept the principle that I may prove each of the elements of the crime beyond a reasonable doubt but

34

yet you may still have some questions that are unanswered?

JUROR #13: Right.

MS. KETTLER: And that doesn't mean that there's a reasonable doubt, would you agree with that, that you have some questions left?

JUROR #13: Yes.

MS. KETTLER: Okay.  Everybody understand that concept?  Is there anybody here that feels for whatever reason that if I prove each and every element of these crimes beyond a reasonable doubt you can't convict this Defendant, raise your hand if you feel that way.

JUROR: I'm sorry, I didn't hear that.

MS. KETTLER: Okay, let me start over.  If I prove each and every element of the crimes against this Defendant, if I do that, is there any reason you would be unable to convict the Defendant, raise your hand?

MS. KETTLER: Okay, now you thought I've asked you some intrusive difficult questions but I have to tell you I've saved the worst for last.   And I don't mean, again, to pry or be disrespectful but I need to know your feelings about this and it's a sensitive issue.  I need to know, and I'm going to ask you some particular questions, about how you feel about interracial dating, specifically about black men dating white women.

And first of all, I guess, it's probably not the kind of thing you want to say, I'm against that.  I think it's terrible.  Because you know what, nobody wants to be considered a racist.   But it's not a very cut and dry black and white issue and you can have legitimate concerns about that and that's, I guess, what I'm trying to get to your true feelings about.   So I'm going to ask you, let me ask Mr. Herber.  I haven't talked to you, I haven't picked on you yet.   How do you feel about interracial

35

dating?

JUROR #23: It's not something I'd do.

MS. KETTLER: It's not something you'd do.   And why is that?

JUROR #23: I just don't agree with it.

MS. KETTLER: You don't agree with it.   Do you think that despite the fact that you don't agree with it, does your personal feelings about it have any proper place in considering this case?

JUROR #23: It's hard to say.

MS. KETTLER: Do you think if you hear testimony in this case that this Defendant and the other Defendant who were dating and that he's obviously African American and she's Caucasian, would that have an impact on your thinking about this case?

JUROR #23: It may.

MS. KETTLER: Okay.   I very much appreciate your being candid.   Whether we agree or not, everybody has an opinion.   And that's what I'm trying to get at right now.   So I'm going to ask you because you're shaking your head Ms. Smith and maybe it's coming from a different place asking you this.   You're a black woman.   Mr. Herber is a white man.   How do you feel about black men dating white women?

JUROR #38: I don't have a problem with it.   I feel that, you know, it's individual.   You want to date a white person, black person, that's your choice.

MS. KETTLER: Okay.   Thank you.   And Mr. Lindlbauer, how do you feel about it?

JUROR #27: Indifferent.

36

MS. KETTLER: Okay, doesn't matter to you one way or the other?

JUROR #27: No.

MS. KETTLER: Okay, Mr. Chestnut, what do you think about it?

JUROR #11: It doesn't matter to me.

MS. KETTLER: Okay, Mr. Bradley?

JUROR #4: I have a white daughter-in-law.

MS. KETTLER: You have a white daughter-in-law, okay. So, but you didn't marry her, your son did, right?

JUROR #4: Yes.

MS. KETTLER: So how do you feel about that?

JUROR #4: I feel okay about it.

MS. KETTLER: Do you think it's bound to cause problems when black people and white people date each other in this racist society we live in?

JUROR #4: No.

MS. KETTLER: No?  Okay.  Do you think you would, so the fact that there's interracial dating involved wouldn't affect your ability to be a juror at all, is that correct?

JUROR #4: Correct.

MS. KETTLER: Okay, Ms. Kulchinsky, how do you fee about it?

JUROR #25: It doesn't bother me.

MS. KETTLER: Okay, doesn't matter?   What about you, Ms. Brown.

JUROR #5: My secretary is black.   We talk a lot about interracial marriages and dating.  I'm married to a white man myself.  But we think

37

in this country it's not right to have, you know, black and white relationship.

MS. KETTLER: It's not right because why?

JUROR #5: I think, you know, this is what we talk about all the time because I think the black man date the white woman just because of the forbidden fruit syndrome.   That's a show of power, a show of force.

MS. KETTLER: Okay.

JUROR #5: And we don't agree with it.

MS. KETTLER: And when you say we, you're talking about yourself and your African American secretaries that you discuss it with, is that right?

JUROR #5: Yes.

MS. KETTLER: And again, I very much appreciate your being honest about it because it's not something that's easy to talk about in our society. But given that those are your opinions, can you put that aside completely when you decide this case?

JUROR #5: I'm always for the underdog and always for the Plaintiff.

MS. KETTLER: The what type?

JUROR #5: The plaintiff.

MS. KETTLER: Okay, well who do you consider the underdog, the dead girl or the defendant?

JUROR #5: The dead girl.

MS. KETTLER: Mr. Raidl -

JUROR #33: Raidl.

MS. KETTLER: Raidl, I'm sorry.   How do you feel about interracial dating?

38

JUROR #33: I don't have a problem.

MS. KETTLER: Okay, Ms. Fannon, what about you, do you have any problem with it?

JUROR #16: No, I don't.

MS. KETTLER: Do you think it's bound to cause problems?

JUROR #16: Not necessarily.

MS. KETTLER: Okay, but it may cause problems, right?

JUROR #16: It may.

MS. KETTLER: Doesn't cause anybody to kill somebody or not kill somebody, right?

JUROR #16: Correct.

MS. KETTLER: So it doesn't have anything to do with this case, right?

JUROR #16: Right.

MS. KETTLER: Okay.   Mr. Fowler, I know you don't want to be a juror but I want to ask you anyway in case you are, how do you feel about interracial dating?

JUROR #17: I don't have like a bad opinion about or whatever, I just would, I would be with the sister.

MS. KETTLER: You'd be with the sisters, okay, fair enough.   Do you think that the fact that, do you have any bad opinions about brothers who choose to date white women?

JUROR #17: We kind of sometimes make jokes, you know, about it, you know where, it's just, I mean I'm not prejudice but it's just, I have been involved or been around it where somebody's made a joke about it or, you know -

39

MS. KETTLER: But you don't have any bad feelings, it's just kind of a -

JUROR #17: I mean, no, I mean he could have got into it with a black girl and the same thing could have happened.

MS. KETTLER: Okay.

JUROR #17: So I don't think just because she was, I didn't know that she was white until you said but -

MS. KETTLER: Okay, alright.

JUROR #17: I don't know if that had anything to do with the crime.

MS. KETTLER: Right, okay, fair enough. Ms. Duncan, do you have any problem with interracial dating?

JUROR #15: No, not at all.

MS. KETTLER: Do you think it's bound to cause problems?

JUROR #15: No, I don't.

MS. KETTLER: Okay. Ms. Smith, did I ask you already?

JUROR #39: Me?

MS. KETTLER: Yes.

JUROR #39: No.

MS. KETTLER: Do you find that it's wrong?

JUROR #39: No.

MS. KETTLER: Alright, do you think it's wrong for you but it's okay. I mean how do you personally feel about it?

JUROR #39: Personally, I dated a mixed guy.

MS. KETTLER: Okay, and you don't think that would have any

40

bearing on your ability to be a fair juror in this case?

JUROR #39: No, I think whatever makes you happy, you should do.

MS. KETTLER: Okay, and would you agree with me that people are responsible for what they do no matter what color they are?

JUROR #39: Absolutely.

MS. KETTLER: Okay.  And Ms. Dryja, I don't think I asked you. Do you have feelings about interracial dating?

JUROR #13: I don't know if it's feelings but I just think of my own daughter.

MS. KETTLER: Okay.

JUROR #13: And I, I'm from the old school that I could not handle it if my daughter did.

MS. KETTLER: Okay, fair enough.  Do you think you could put your feelings about that aside and not allow them to influence your work as a juror in this case?

JUROR #13: I would hope that I could do that but -

MS. KETTLER: But you're not certain.

JUROR #13: But being a mother and just the relationship that I have with my children, I would probably constantly think of that like what if was Diana.

MS. KETTLER: Well, dating a black man wouldn't make your daughter a killer, would it?

JUROR #13: No.

MS. KETTLER: Would it make her not responsible for what she

41

did, right?

JUROR #13: Right.

MS. KETTLER: She would still be responsible for what she did if the person she dated was purple, isn't that right?

JUROR #13: True.

MS. KETTLER: Okay.   So can I get, I need you to answer verbally, is there anybody here that thinks they can't be fair to Mr. Benson if they hear that he was dating a white woman because that's what we're here to get, a fair jury?   Anybody think it would be impossible to be fair to him knowing that?   You think you might have a problem?

JUROR #13: I think so.

MS. KETTLER: I appreciate you being honest, thank you.   I don't have anything further.

THE COURT: Mr. Burkett.

MR. BURKETT: Thank you.   First of all, let me start out again by saying good morning to you.   I probably won't be as long as the government was.   And before I even start, I just want to say basically a couple things here.   First of all, in this particular case, there are, what we're doing here is called voir dire.   And it comes from a Latin word, the Judge will   tell you, but it really means to speak the truth.   The answers you give, there is no such thing as a right and wrong answer.   We're here, I'm here basically to determine whether or not we can get twelve people to judge what they accuse this young man of doing.   So there is no such thing as a right or wrong answer.   I'm not going to ask you if, well I will probably ask you but, if you're prejudice or if you date white women.   What I will ask you, though, is this.   I know that you've lived a number of years.   And I know that you have certain feelings

42

and certain prejudices, biases.

The Judge will tell you you can set those things aside.   I know that's unrealistic.   My question to you is this.   Even with the biases and prejudices that you might have, can you still be fair to this young man here?   And can I just see a show of hands on anyone who thinks that they probably won't be or can't be fair to him for any reason whatsoever.   Yes sir?

JUROR #11: I can't.

MR. BURKETT: And why is that, sir?

JUROR #11: Because of what the Judge read to us.

MR. BURKETT: And could you tell us what the Judge read to you that makes you think you won't be fair?

JUROR #11: He murdered a young lady.

MR. BURKETT: I'm sorry but -

JUROR #11: The murder of the young lady.

MR. BURKETT: The Judge also read, like I said, sir, there's no right or wrong answer.   I just appreciate your candor.   Thank you.

JUROR #11: I'm being honest with you.

MR. BURKETT: And you don't know how I appreciate that.   Sir, the Judge also read that at this state you're to presume him innocent of this crime. Are you telling us at this juncture that you've already made up your mind that he's guilty?

JUROR #11: I can't, honestly I can't be fair.   What the Judge read to me.

MR. BURKETT: I understand that.   But are you telling me that right now you presume that he's guilty?

43

JUROR #11: Yes.

MR. BURKETT: Okay, and do you also presume, sir, that these police officers would not have arrested him if they not thought he was guilty.

JUROR #11: Yes.

MR. BURKETT: Beg your pardon?

JUROR #11: Yes.

MR. BURKETT: So if you're selected on this jury, I've got to prove to you, sir, that this man is innocent?

JUROR #11: Yes.

MR. BURKETT: Okay, and look to fairness, and I not only respect that, I appreciate it.   Thank you very much, sir.   I'm sorry, ma'am, please forgive me.

JUROR #5: The Judge asked for whether I can be fair based on religious belief.

MR. BURKETT: Yes ma'am.

JUROR #5: I'm not sure it's religious belief but I don't believe, you know, I tend to believe in Buddhism is there's no reason you should kill anybody. I even taught my secretary not even to kill a fly because you can't kill anything or anybody.   I hope, you know, being educated I can be fair but that's in my mind. There's no reason that anybody should kill anybody for any reason.

MR. BURKETT: And I cannot agree with you more than what you just said.   I cannot justify the killing of another human being.   I probably don't feel that same way as it relates to animals because we need to kill them and we eat them.   But I agree with you.   But for example, as I was leaving this morning I was watching MSNBC and they said that since the Supreme Court approved, they're

44

going to put somebody to death tonight. I think that is wrong, my personal opinion because I don't even think the state should be allowed to kill a person.

THE COURT: Well counsel, it's irrelevant. Michigan doesn't have capital punishment. Go on to something else.

MR. BURKETT: Sure. Anyway, I just want you to know that I agree with that. But we're not here for that purpose. We're here to decide one thing. And that one thing is did this young man do the killing. Do you think you can be fair about that?

JUROR #5: I hope so but like I said, I'm sitting here already thinking about a poor girl that's been dead already.

THE COURT: Okay, if I allow these conversations to go on, I'm having an increasing problem. His question, ma'am, is can you be fair?

JUROR #5: I think so, Judge.

MR. BURKETT: You say you can be fair?

JUROR #5: Yes.

MR. BURKETT: Okay, I am not, I mispronounce names so badly, so I won't probably call you by name, I'll go by seat numbers so I don't screw up too badly. Juror number four, you said that the thing that would enter your mind in this particular case was the fact that you have a young daughter and this would be going all through your mind throughout the trial. And that's understandable. But you don't have any sons, do you?

JUROR #13: I do.

MR. BURKETT: Okay, would you feel the same way if your son was accused of a murder that you didn't think he did? How would you feel about that?

45

JUROR #13: I would sure support my son, yes.

MR. BURKETT: Okay, I understand that, fair enough.   Mr. Fowler, how are you today, sir?   Mr. Fowler, I don't think it's a secret you don't want to be on this jury, is that correct, sir?

JUROR #17: That's right.

MR. BURKETT: Okay, and Mr. Fowler, you said that because you've been harassed by the police, is that true?

JUROR #17: They just asked have I ever been arrested.   That's not why I said I don't want to be on the jury.   You asked have we ever been, had any problems or whatever with the police and I said yeah, I have.

MR. BURKETT: Okay, but that's not a reason that you don't want to be on this jury?

JUROR #17: Right, that's not the reason.

MR. BURKETT: What is the reason, sir?

JUROR #17: Just being, like sitting on this side of the court for me, like you said there's not a right or wrong answer but me sitting on this side of the court, my history and just growing up, I've been around a lot of just criminal activity. So sitting in the courtroom, not as a defendant, I mean I just never got into any trouble where I got caught doing something.   But to look at this young man, I see myself.

MR. BURKETT: But you don't kill nobody.

JUROR #17: That's why I don't feel I can be a fair juror from both sides.   I'm being honest.

MR. BURKETT: And I appreciate that.   Based upon your

46

experience, sir, do you think the police department treat certain people based on their age, their race or anything different than they treat other people?

JUROR #17: In certain townships, that is true.

MR. BURKETT: Do you think the police department, sir, would treat a black person accused of killing a white girl different than they would if it were reversed?

JUROR #17: My person belief, I do.   I think they would.

MR. BURKETT: Does anybody else feel that way?   Nobody else.   One thing that has been mentioned here and I want to see your feelings about it and that's what my role is in this case.   I want to make sure you don't hold this against me.   My job in this case is not to prove him innocent.   We have been told that all I have to do is come here, be on time and not interrupt the proceedings.   And I'll underline the being on time as prevalent.   But I can sit here, myself, Patricia and this Defendant and not do anything and tell the government you brought us in here, you charged us with this crime.   Now you prove it or we're leaving.   If that is my position, does anyone think that's wrong, can I see a show of hands?   No hands. Does anyone think, other than you, sir, that I have to prove that this young man is innocent?   No hands.

Does everyone here understand that the government who brought us in this courtroom has the burden of proof?   She's got to prove each and every element of this offense.   And if she can't, under the laws that we operate under, you must find him not guilty.   Does everyone understand that?   Does anyone have a problem with that?   Okay, fair enough.   The Court will tell you what a reasonable doubt is.   But -

47

JUROR #5: Can I ask you a question?

MR. BURKETT: Yes ma'am.

JUROR #5: For circumstantial evidence.

MR. BURKETT: I think the Court will tell you what circumstantial evidence and whether or not you can use circumstantial evidence. The Judge gives you the law. And he will tell you what all of those things are, okay? And I'm not trying to be smart or anything. But -

JUROR #5: I just want to clarify in my head. So that means that the prosecutor doesn't have to prove, it's not the burden of proof on the prosecutor and us sitting here to  use circumstantial evidence and make a judgment based on that?

THE COURT: You may be able to but we're not far enough in the case for me to decide if there is circumstantial or direct evidence. The answer is you may be able.

MR. BURKETT: May I proceed?

THE COURT: Please.

MR. BURKETT: The government asked you a few minutes ago, and she asked, and I think everybody raised their hand, who watches CSI? Actually CSI Miami is my favorite. It comes on Wednesday nights on A&A all night long. I mean for five hours. And if the basketball tournaments weren't on, I'd be watching it. But anyway, be that as it may, she said that, and some of you said that that's not realistic, okay, because that's entertainment. And I agree it is. But do you think fingerprints is entertainment or do you think that's realistic. Does everybody agree with that? Footprints is not entertainment, that's realistic. Everybody agrees? DNA is not entertainment. That's realistic. Everybody agree with that?

48

A host of the things that they say on CSI Miami and those CSI shows are realistic.  Do you agree with that?  And you'll be able to separate what's realistic and what's not, correct?  Now, Ms. Smith, yes ma'am.  Right, I was, you know, Smith is the easiest to pronounce so,   I understand that you've had, you lost a member of your family to a murder.   And you were set aside with the results of that case, is that correct ma'am?

JUROR #38: Yes.

MR. BURKETT: I'm trying to say this in such a way, I know you can't put it out of your mind but in spite what happened to your sister in this case, ma'am, do you think you could be fair to this young man?

JUROR #38: Of course, I could.

MR. BURKETT: Okay, at this juncture I'm asking you and the entire panel, at this juncture, do you presume him to be innocent?

JUROR #38: Yes.

MR. BURKETT: Okay, so everybody agrees with that.  Do you say that the burden of proof is on the government?

JUROR #38: Yes.

MR. BURKETT: And do you say that if I'm lazy and don't do anything, you're not going to hold it against him?

JUROR #38: No.

MR. BURKETT: I mean you may not want to harm me afterwards.

JUROR #38: Right.

MR. BURKETT: Okay, but you're not going to hold it against him, is that correct?  Everybody feel that way?  Just a couple more things I want to touch

49

on.   Juror number seven, could you pronounce your name for me again, sir?

JUROR #23: Herber.

MR. BURKETT: Herber.   Mr. Herber, as I told you,   there are no right or wrong answers but you were giving us your view on this interracial dating and I didn't quite understand, you were getting kind of soft.   You wouldn't do it, I understand that.   And why wouldn't you do it?

JUROR #23: Don't think it's right.

MR. BURKETT: Beg your pardon?

JUROR #23: I just don't think it's right.

MR. BURKETT: Okay.   Does it go both ways, black women, white men, white men, black women?

JUROR #23: Yes.

MR. BURKETT: Sir, knowing how you feel about this case, sir, do you think you can be fair to this young man?   I think the evidence will show -

THE COURT: I didn't get the answer.   I didn't hear the answer.

MR. BURKETT: Well, sure.   You have to speak out.   He has to say -

THE COURT: What was the question?

MR. BURKETT: Knowing how you feel, sir, about this case, do you think that you can be fair to this young man?

JUROR #23: I can't say for a hundred percent, no.

MR. BURKETT: If the government here is accusing him of killing a white woman, do you think you could still be fair?   Or you can't say?

JUROR #23: Can't say.

MR. BURKETT: Okay, the last question, sir, I'm going to ask,

50

and I'll ask it of the whole panel.  If you were sitting here in this seat and you were charged with what he's charged with and you know how your mind works, how you feel, how you think, would you want a juror who thought and felt the same as you do judging whether or not you committed first degree murder?  Would you want somebody who thought like you did, sir?

    JUROR #23: No.

    MR. BURKETT: Okay, and why not?

    JUROR #23: Not fair.

    MR. BURKETT: Beg your pardon?

    JUROR #23: Not fair.

    MR. BURKETT: Okay, I appreciate that, sir.  The rest of you, can I get a response from each and every one of you starting with Mr. Fowler.  Oh, you've already given us your opinion, I'm sorry.  I'm sorry.

    JUROR #15: Duncan.  Yes, I would.

    MR. BURKETT: You would?

    JUROR #15: Yes.

    MR. BURKETT: Ma'am?

    JUROR #1: Would I want them on my trial or -

    MR. BURKETT: No, knowing how you think and how you feel about this whole situation, he's accused of killing a white girl.  Would you want, if it were you or one of your loved ones sitting in this seat, would you want someone who thought like you did judging whether or not you're innocent or guilty?

    JUROR #1: Yeah.

    MR. BURKETT: Thank you, ma'am?

    JUROR #13: No.

MR. BURKETT: You would not?

JUROR #13: No.

MR. BURKETT: And that's because you can't be fair?

JUROR #13: I can't.

MR. BURKETT: Okay, and I appreciate that.   What makes you, Ms. Smith?

JUROR #38: I could be fair because you know as I said earlier everyone is individual so you should have to go with that.

MR. BURKETT: Okay, thank you.   Yes ma'am, I'm sorry?

JUROR #16: Yes, I would like someone like myself on the jury.

MR. BURKETT: And that's because you will be fair?

JUROR #16: Yes.

MR. BURKETT: Sir?

JUROR #33: Yes, I could be fair.

MR. BURKETT: And you'd want someone who thought like you did?

JUROR #33: Yes I would.

MR. BURKETT: Thank you sir, I appreciate that. Sir?

JUROR #27: Yes.

MR. BURKETT: You heard the previous question?

JUROR #27: I did.

MR. BURKETT: So you think you could be fair if you're chosen for this?

JUROR #27: Yes.

52

MR. BURKETT: You've already given us your opinion, sir.

JUROR #4: Yes, I can be fair.

MR. BURKETT: And that's because you could be fair to this man?

JUROR #4: Yes.

MR. BURKETT: Ma'am?

JUROR #25: Yes, I believe I could be fair.

MR. BURKETT: Thank you, ma'am. One more time, you don't think you can be fair, do you?

JUROR #5: I can't say, I'm not for sure. But I think I'm leaning to where I'm not being fair.

MR. BURKETT: You're leaning toward that?

JUROR #5: Yes.

MR. BURKETT: Okay.

JUROR #5: Based on how I feel about the case.

MR. BURKETT: Okay, with the exception of those who've already told us, when I sit down and I'm about to do it now, I can tell this young man that if we choose those people that says they can be fair on this jury, that he will get a fair trial by you? Is that true, ma'am? Does anybody who disagrees with the people, except the people that I've already talked with, if you're chosen on this case, you will be fair to him? If you're chosen, you're going to make the government prove their case? Is that true? Thank you. Judge, I have nothing further.

THE COURT: People pass for cause?

MS. KETTLER: Yes, your Honor.

THE COURT: Defense pass for cause?

53

MR. BURKETT: No, I do not.  I have challenges.  Do I make them here or do I make them at the bench?

THE COURT: I don't want to make them at the bench.  Who are you challenging for cause?  Whom are you challenging for cause?

MR. BURKETT: Juror number four, juror number seven and juror number fourteen.

THE COURT: Let's do it one at a time.  As to Ms. Dryja, response from the People.

MS. KETTLER: Actually I don't object to that your Honor.

THE COURT: Ms. Dryja, thank you, you're excused.  Juror number seven, Mr. Herber?

MS. KETTLER: I do not object to his being excused for cause.

THE COURT: Mr. Herber, thank you, you're excused for cause.  Number fourteen, Ms. Brown.

MR. BURKETT: Yes, your Honor.

MS. KETTLER: I do not object to her being excused for cause.

THE COURT: Thank you.

MR. BURKETT: Juror number ten.

THE COURT: Mr. Chestnut.

MR. BURKETT: Yes.

THE COURT: Hang on.  Do the People object?

MS. KETTLER: No, I don't object.

THE COURT: Thank you Mr. Chestnut.

MR. BURKETT: Your Honor, I respectfully, also juror number one.

54

MS. KETTLER: I do not object.

THE COURT: Thank you Mr. Fowler.   We'll fill the seats and then take a short break.

THE CLERK: Yeanina Robinson, first name Y-E-A-N-I-N-A.

JUROR #34: How do you pronounce that, Yeanina.

THE CLERK: Yeanina Robinson, number one.   Thelma Odom, O-D-O-M, seat number four, please.   Garabed -

JUROR #40: Uluhogian.

THE CLERK: Thank you very much.   Pronounce it again, please.

JUROR #40: Uluhogian.

THE CLERK: Okay, that's spelled U-L-U-H-O-G-I-A-N.

JUROR #40: Correct.

THE CLERK: Seat number seven.   William Kline, K-L-I-N-E, seat number ten.   Kimberly White, seat number fourteen.

THE COURT: Keeping the fourteen of you together, follow the direction of Officer Tillman.   We'll take a fifteen minute break.   The rest of you also, you don't have to stay together but I need you back in the gallery when we return. And I need you fourteen in the seats when you return.   Thank you.

(Whereupon the jurors were excused for a short break)      -  -

-

THE COURT: Ms. Robinson if I can begin with you, can you be with us during the time I outlined?

JUROR #34: Yes, your Honor.

THE COURT: Ms. Odom, can you be with us during the time I

55

outlined?

JUROR #31: Yes.

THE COURT: Mr. Kline?

JUROR #24: Yes.

THE COURT: Ms. White?

JUROR #41: No.

THE COURT: Why not?

JUROR #41: I'm having transportation problems and I'm also watching over a sick relative right now at my house.  So it would make it really difficult for me to get a ride here.

THE COURT: I'm sorry?

JUROR #41: It would make it really difficult to even get back and forth out this way and leaving my relative   home alone.

THE COURT: Well how is the person related to you?

JUROR #41: My aunt.

THE COURT: And what do you do for her?

JUROR #41: Well she has diabetes really bad and I have to help her with her injections.   And she's not doing too well these days.

THE COURT: I'll excuse you.

THE CLERK: Gwendolyn Zarrieff, Z-A-R-R-I-E-F-F.   Can you pronounce the last name?

JUROR #42: Zarrieff.

THE CLERK: Thank you, seat number fourteen.

THE COURT: Ms. Zarrieff, can you be with us during the time I outlined?

56

JUROR #42: Yes.

THE COURT: Ms. Robinson, have you ever been on a jury before?

JUROR #42: Yes.

THE COURT: How long ago?

JUROR #42: I'd say twenty years.

THE COURT: And was it a civil or criminal case?

JUROR #42: It was a civil and before that, I was also on a criminal case?

THE COURT: Did the juries in each case reach a verdict?

JUROR #42: Yes, they did.

THE COURT: Ms. Odom, have you ever been on a jury before?

JUROR #31: Yes.

THE COURT: How long ago?

JUROR #31: About five or six years ago.

THE COURT: Civil or criminal?

JUROR #31: Criminal.

THE COURT: Did the jury reach a verdict?

JUROR #31: Yes.

THE COURT: Mr. Uluhogian, have you ever been on a jury before?

JUROR #40: Yes sir.

THE COURT: And did the jury reach a verdict?

JUROR #40: It was civil and yes, it did.

THE COURT: And can you be with us during the time I outlined?

57

JUROR #40: I'm scheduled to be in Spring Lake on Monday.

THE COURT: Well, can you change that arrangement?

JUROR #40: After today, I'll have to check on it.

THE COURT: Well what are you scheduled to be in Spring Lake for?

JUROR #40: A business meeting.

THE COURT: And you think it can be rescheduled?

JUROR #40: Possibly, yes.

THE COURT: Mr. Kline, have you been on a jury before?

JUROR #24: Yes, your Honor.

THE COURT: How long ago?

JUROR #24: It was probably in the '70's.

THE COURT: Civil or criminal?

JUROR #24: Criminal.

THE COURT: Did the jury reach a verdict?

JUROR #24: I was the thirteenth juror, I was dismissed.

THE COURT: Ms. Zarrieff, have you been on a jury before?

JUROR #42: Yes.

THE COURT: How long ago?

JUROR #42: About twenty years ago.

THE COURT: Was it civil or criminal?

JUROR #42: Criminal.

THE COURT: Did the jury reach a verdict?

JUROR #42: Yes.

THE COURT: Ms. Robinson, what do you do for a living?

JUROR #34: I'm a residential cleaner for Merry Maids.

THE COURT: Are you married or single?

JUROR #34: Single.

THE COURT: What town do you live in?

JUROR #34: Detroit.

THE COURT: Ms. Odom, what do you do for a living?

JUROR #31: I'm retired.

THE COURT: From?

JUROR #31: Wayne County, the school district.

THE COURT: And are you married or single?

JUROR #31: Divorced.

THE COURT: What town do you live in?

JUROR #31: Detroit.

THE COURT: Mr. Kline, what do you do for a living?

JUROR #24: I'm retired from Monsanto Chemical.  I'm a part time bus driver for the city of Rockwood I transport senior citizens.

THE COURT: Single or married?

JUROR #24: Married.

THE COURT: What does your wife do?

JUROR #24: She's an office manager.

THE COURT: What town do you live in?

JUROR #24: Woodhaven.

THE COURT: Ms. Zarrieff, what do you do for a living?

JUROR #42: I'm a school nurse for the Detroit Public Schools.

THE COURT: Are you single or married?

59

JUROR #42: Widowed.

THE COURT: What town do you live in?

JUROR #42: Detroit.

THE COURT: Questions for the People.

MS. KETTLER: Good morning to all of you who are new in the box. Did the people who are new have the opportunity, I hope, to listen to the questions I was asking the other jurors? Okay, I see Ms. Robinson nodding your head. Would you have raised your hand to answer any of those questions?

JUROR #42: I don't think so.

MS. KETTLER: Okay, unpleasant experiences with the police?

JUROR #42: No.

MS. KETTLER: Victims of crime in your friends or family?

JUROR #42: No.

MS. KETTLER: Think you can be fair?

JUROR #42: Fair and impartial.

MS. KETTLER: Okay, you've been a juror twice before, right?

JUROR #42: Yes.

MS. KETTLER: Okay, would anything about your experiences in those cases affect your ability to be a juror in this case?

JUROR #42: Not at all.

MS. KETTLER: And you wouldn't compare this case to the cases you've been on before?

JUROR #42: No.

MS. KETTLER: Okay, great. Anything at all you want to tell me that you think affects your ability to be fair and impartial?

60

JUROR #42: None at all.

MS. KETTLER: Okay, thank you.   And Ms. Odom, you're retired from the intermediate school district, is that right?

JUROR #31: Yes.

MS. KETTLER: Do you have children?

JUROR #31: Yes.

MS. KETTLER: Are they grown?

JUROR #31: Yes.

MS. KETTLER: Ms. Robinson, do you have children?

JUROR #34: No, none.

MS. KETTLER: Okay, who of the new jurors besides Ms. Odom, who has children?   Grown or little?

JUROR #40: Nine year-old.

MS. KETTLER: Okay, and the two of you, Mr. Kline and Ms. Zarrieff, are yours grown?

JUROR #42: Yes.

MS. KETTLER: Okay, I need to ask you something and then I'm going to come back to Ms. Odom and ask you some more things but I want to ask this of all of you who have children.   I need you, like the other jurors, I need you to look at this young man.   He is young, and especially you, Ms. Odom and Ms. Zarrieff, working in the school system, I would assume that you would, I hope, you enjoy young people and you like working with them and kids, is that right?

JUROR #42: Yes.

MS. KETTLER: And you have kids.   Do you think if you're picked to be on this jury, when you got back in the jury room, you're going to say, if

61

you go back in that jury room and you believe that I've proved the case beyond a reasonable doubt, do you think you would say, gosh, this is a horrible crime and I know he did it but he's so young.   He deserves another chance?   Do you think that might enter your mind, Ms. Zarrieff?

        JUROR #42: The thought?

        MS. KETTLER: Yes.

        JUROR #42: Oh, the thought would enter my mind, yes.

        MS. KETTLER: Okay, but, because we're human, right?

        JUROR #42: Exactly.

        MS. KETTLER: But would you agree with me that the Judge tells you you can't consider sympathy, you would be able to not consider sympathy, right?

        JUROR #42: Yes.

        MS. KETTLER: Because if he's guilty and he's proven guilty, that's on him and he's young, right?

        JUROR #42: Yes.

        MS. KETTLER: Okay, would you agree with that Ms. Odom?

        JUROR #31: Yes.

        MS. KETTLER: Do you think it would be proper if you went back there and you said, I really think he did it.   It's proven beyond a reasonable doubt but I keep looking at him and that could be my son.   You know, he deserves another chance.   Do you think you might feel that way?

        JUROR #31: I would feel that way but, you know, that wouldn't -

        MS. KETTLER: You wouldn't act on it?

        JUROR #31: No.

        MS. KETTLER: Okay, great, thank you.   And did you have a

chance to listen to the questions I asked the jurors who were up here?

JUROR #31: Yes.

MS. KETTLER: Is there anything that you would have raised your hand about and said I need to speak on that?   For example, anybody in your friends or family members had unpleasant experiences with the police that you're aware of?

JUROR #31: No.

MS. KETTLER: Okay, what about anybody in your friends or family been victims of crimes?

JUROR #31: Yes.

MS. KETTLER: Who was that?

JUROR #31: My nephew got killed.

MS. KETTLER: Okay, and did you follow that proceeding and like keep track of what was going on with it?

JUROR #31: Yes, but it wasn't in the state.

MS. KETTLER: Okay, did the police wherever it was, did they arrest somebody?

JUROR #31: No.

MS. KETTLER: Okay, so do you feel, what state was it in?

JUROR #31: New York.

MS. KETTLER: Okay, do you feel like those police in New York failed or do you feel like they did the best they could and it just wasn't in the cards for it to be solved?

JUROR #31: I don't think it was in the cards to be solved.

MS. KETTLER: Okay, so nothing about their failure to catch that

63

person would affect your ability to be a juror in this case, is that right?

JUROR #31: No.

MS. KETTLER: Okay, anything else you want to tell me that would affect your ability to be fair?  Oh, I know, how do you feel about interracial dating?  I know this isn't easy to talk about but there's no right or wrong, do you think you would allow, do you have strong feelings about it?

JUROR #31: No, I don't.

MS. KETTLER: And even if you did, your opinions wouldn't affect your ability to be a fair juror in this case, is that right?

JUROR #31: No.

MS. KETTLER: Okay, because you have to judge everybody regardless of the color of your skin or who they date, is that right?

JUROR #31: Right.

MS. KETTLER: Okay, who else is new?   Mr. Uluhogian.

JUROR #40: Yes ma'am.

MS. KETTLER: Did you have a chance to hear the questions I was asking other jurors?

JUROR #40: Yes ma'am.

MS. KETTLER: Okay, what about you, anybody in your friends, family or yourself ever arrested or convicted of a crime?

JUROR #40: I'm sorry, are you clumping everything together there -

MS. KETTLER: Right, any of those?

JUROR #40: No, there's nothing that -

MS. KETTLER: Well has there been somebody in your family

64

who's been arrested for a crime or a friend?

JUROR #40: Arrested, no.

MS. KETTLER: Okay.  What about victims of crime, have you had any victims of crime in your close friends or family?

JUROR #40: No.

MS. KETTLER: Okay.  Do you have any strong opinions about interracial dating?

JUROR #40: No.

MS. KETTLER: Anything you want to tell me about your ability to be fair and impartial on this jury?

JUROR #40: No.

MS. KETTLER: Mr. Kline, what did you do at Monsanto before you retired?

JUROR #24: I had several jobs.  They were union jobs you bid for.  I was a trainer.  I was an operator.  I worked in the storeroom.  I worked in -

MS. KETTLER: Were you an engineer?

JUROR #24: No, I'm not that educated.

MS. KETTLER: Okay, alright.  You had the opportunity to hear the questions I asked the other jurors?

JUROR #24: Yes.

MS. KETTLER: Okay, do you have anybody in your close friends or family or yourself ever arrested for a crime?

JUROR #24: Definitely no.

MS. KETTLER: Okay, what about victim of a crime?  Anybody you aware of?

65

JUROR #24: No.

MS. KETTLER: Do you think that you can be fair to this young man regardless of who he's dating or was dating?

JUROR #24: I think so.   I mean I had feelings about interracial things, you know, years ago.   And now it's the norm.   And I, you know, I don't think it is, look at it twice, you know.   I just accept it for what it is.

MS. KETTLER: Okay.

JUROR #24: I think I can rule it out, you know.

MS. KETTLER: You say you think.   Can you or -

JUROR #24: I can.

MS. KETTLER: You can, okay.   Because that really doesn't have anything to do with individual responsibility, does it?

JUROR #24: No it doesn't and I would base everything on the facts.

MS. KETTLER: Okay.

JUROR #24: Not the individual.

MS. KETTLER: Okay, same thing I asked before about these crime shows and whatnot.   Can you, if you're on this jury and you go back in that room and the Judge says decide this case on the evidence and the law I give you, you can eliminate to that and that only?   Not I saw something there on tv and -

JUROR #24: Definitely not, no I would not.

MS. KETTLER: Okay, and Ms. Zarrieff, what about you, did you have the opportunity to hear the questions I was asking when you were out there?

JUROR #42: Yes.

MS. KETTLER: Okay, was there anything that came up that you

66

would have raised your hand to answer and speak on?

JUROR #42: No.

MS. KETTLER: Any victims of crime in your family that you're aware of?

JUROR #42: Not offhand.

MS. KETTLER: Okay, do you know if, are you aware of any close friends or family members of yours getting arrested or having unpleasant experiences with the police?

JUROR #42: Friends of family that were arrested.

MS. KETTLER: Do you think they were, with what you know about it, do you think they were treated fairly?

JUROR #42: Yes.

MS. KETTLER: Okay, and whatever happened in those other cases has nothing to do with this case and these police officers, is that right?

JUROR #42: Yes.

MS. KETTLER: Okay.  Do you have any strong feelings about interracial dating?

JUROR #42: I used to be very adamant but that's society, you see it, nothing new now.   You see it, accept it.

MS. KETTLER: Would you agree with me that regardless of what color somebody is, they're responsible for their actions.

JUROR #42: Most certainly.

MS. KETTLER: And no matter who they date or whatever, you have to pay the consequences for what you do, is that right?

JUROR #42: Most definitely.

67

MS. KETTLER: Okay, any of the new jurors, thank you, I didn't mean to cut you off.   Any of the new jurors, anything else you want to tell me about why you couldn't be a fair juror?   Raise your hand if so.   Okay, thank you.   Thank you, Judge.

THE COURT: Mr. Burkett.

MR. BURKETT: Thank you.   To the new jurors, good morning.

JURORS: Good morning.

MR. BURKETT: Just a very, very few questions.   You all heard the questions that I asked the other panel of jurors, is that correct?   Okay, did I ask any questions that you think we need to discuss as it relates to your being a fair juror?   Okay, if you are selected in this case, can you be fair?   Okay, juror number ten, you said that at one point you had certain feelings about interracial dating?

JUROR #24: Yes.

MR. BURKETT: Okay, those feelings that you have, that you had, did you, dispense with those feelings or you still have them or what?

JUROR #24: No, I can't say that I, that I still don't think about it. I mean I'm indifferent to it now, you know.   I mean I did have feelings, you know. But now it doesn't bother me.   As long as two people are together and they're happy, you know, it doesn't really bother me.   But in the past, it did, I had thoughts about it.

MR. BURKETT: Okay, oh, is it true then, sir, that it would not interfere with your ability to be fair?

JUROR #24: No, I don't think so, no, it will not.

MR. BURKETT: Okay, thank you sir, I appreciate it.   And sir, I'm not going to begin to try and pronounce your name.   How are you today, sir?

JUROR #40: Good, thank you.

MR. BURKETT: Okay, do you have any particular feelings about interracial dating?

JUROR #40: No sir.

MR. BURKETT: And you can be fair?

JUROR #40: Yes sir.

MR. BURKETT: If the government alleges in this case that he, my client, was dating a white girl and another white girl got killed, can you presume him to be innocent?

JUROR #40: If he's innocent.

MR. BURKETT: As we sit here now, do you assume, can you start with a clean slate?

JUROR #40: He's innocent until proven guilty.

MR. BURKETT: Thank you sir, I appreciate it.   Judge, I'm going to pass for cause.

THE COURT: People pass for cause?

MS. KETTLER: Yes, your Honor.

THE COURT: Challenges to the People.

MS. KETTLER: Your Honor, the People would like to thank and excuse juror number nine, Mr. Lindlbauer.

THE COURT: Mr. Lindlbauer, thank you.

MS. KETTLER: And juror number seven, Mr. Uluhogian.

THE COURT: Mr. Uluhogian, thank you.

THE CLERK: Robert Sain, S-A-I-N, seat number seven.   Jeffrey Franklin, seat number nine.

69

THE COURT: Mr. Sain, do you think you know any of the people who have been introduced?

JUROR #35: No.

THE COURT: Can you be with us during the time I outlined?

JUROR #35: Yes.

THE COURT: What do you do for a living?

JUROR #35: I retired last week, Ford Motor Company, thirty five years.

THE COURT: Well congratulations, I bet you're a happy man.

JUROR #35: Oh yeah.

THE COURT: And are you single or married?

JUROR #35: Married.

THE COURT: What does your wife do?

JUROR #35: Housewife.

THE COURT: What town do you live in?

JUROR #35: Detroit.

THE COURT: Based on all the questions that have been asked, can you think of any reason that you would not be fair?

JUROR #35: No.

THE COURT: Mr. Franklin, what do you do for a living?

JUROR #18: I'm a manager at Chucky Cheese.

THE COURT: Are you singled or married?

JUROR #18: Single.

THE COURT: And what town do you live in?

JUROR #18: Canton.

70

THE COURT: Can you be with us during the time I outlined?

JUROR #18: No.

THE COURT: Why?

JUROR #18: I am also a part time student at Schoolcraft College. I'm going to be starting my spring classes next week.

THE COURT: Well are they morning or afternoon?

JUROR #18: They're early afternoon.

THE COURT: I'll be done with you by then.

JUROR #18: Well it's kind of hard to do homework, work and serve on this jury for two weeks or a week even and then it's a struggle to get here, wake up early and then, you know, hurry and get to school by one o'clock.

THE COURT: Knowing all of those things that may impinge on your life, can you still be fair in this case?

JUROR #18: Yes.

THE COURT: Do you think you know any of the people that have been introduced?

JUROR #18: No.

THE COURT: What town do you live in?

JUROR #18: Canton.

THE COURT: Oh, I already asked you that. Questions for the People.

MS. KETTLER: Yes, thank you, Judge. Good morning Mr. Sain and Mr. Franklin. Did the two of you have the opportunity to hear the questions I was asking the larger group?

JURORS: Yes.

71

MS. KETTLER: Okay, I'm going to try not to repeat everything but I do want to ask you a couple of things.   Mr. Sain, congratulations on your retirement.   I'm sure this isn't what you want to be doing the first week back, or first week of retirement but since you are here, let me ask you this.   Do you agree with me that some people are better than others in telling if people are telling the truth?

JUROR #35: Yes.

MS. KETTLER: Okay, some people are pretty gullible, would you agree?

JUROR #35: Yes.

MS. KETTLER: Some people kind of have a keen sense for evaluating truthfulness.   Would you say that you're a good judge of whether people are telling the truth or not?

JUROR #35: Yes.

MS. KETTLER: Okay, and have you or any close friends or family members had any unpleasant experiences with police?

JUROR #35: No.

MS. KETTLER: Or any other aspect of the justice system?

JUROR #35: No.

MS. KETTLER: Okay, what about members of your family or friends who have been victims of crime, any of that?

JUROR #35: No.

MS. KETTLER: Okay.   How do you feel about interracial dating?

JUROR #35: I accept it.

MS. KETTLER: Okay, and would you say, would you agree with

72

me that whether you're black or white or whatever, you're responsible for what you do?

JUROR #35: Yes.

MS. KETTLER: And that's regardless of who you choose to date or whose influence you're under or anything like that?

JUROR #35: Yes.

MS. KETTLER: Okay, and what about these crime shows that we've talked about, do you watch those?

JUROR #35: I worked afternoons all the time, I never had an opportunity.

MS. KETTLER: Okay.  So if you're picked for this jury, would you agree that you have to decide this case only on the evidence in this case and the law the Judge gives you?

JUROR #35: Yes.

MS. KETTLER: And that would preclude maybe having sympathy for such a young man.  If you believe he's proven beyond a reasonable doubt to be guilty, would you vote to convict him regardless of how young he is or how serious the crime is?

JUROR #35: No sympathy.

MS. KETTLER: No sympathy, I'm sorry, were you a juror before?

JUROR #35: Twice before.

MS. KETTLER: Okay, anything about being a juror in the past that would affect you in this case?

JUROR #35: No.

73

MS. KETTLER: Okay, and you would decide this case based only on this case.   You wouldn't compare it to other cases you sat on?

JUROR #35: No.

MS. KETTLER: Okay, something else I had intended to ask, you are, as this case goes along if you stay on this jury, there's going to be another jury. You won't always hear everything the jury says, I mean everything the other jury hears.   Some things will be just for your jury.   Some things may be just for the other jury.   If the Judge says don't, you know, speculate about that, just focus on what you hear.   Can you do that?

JUROR #35: Yes.

MS. KETTLER: Okay, you're not going to be say well geez, I wonder what they're hearing or, you know, speculating about what it is.   You can not do that, is that right?

JUROR #35: Yes.

MS. KETTLER: Okay.   Mr. Franklin, what about you, any close friends or family members ever arrested or convicted of a crime?

JUROR #35: Yes.

MS. KETTLER: Okay, who would that be?

JUROR #18: My best friend I grew up with, Mike, was convicted for possession of cocaine.

MS. KETTLER: Okay, do you think he was treated fairly?

JUROR #18: Yes.

MS. KETTLER: Okay, do you think that would affect your ability to be a fair juror in this case?

JUROR #18: No.

74

MS. KETTLER: Okay, I hear you saying that you feel like you have too much on your plate to be a good juror, is that right?

JUROR #18: Yes.

MS. KETTLER: How old are you?

JUROR #18: Twenty.

MS. KETTLER: Okay, nothing further.   Thank you.

THE COURT: Mr. Burkett.

MR. BURKETT: Two new jurors, good morning.   Mr. Sain, thirty five years, huh?   Congratulations.

JUROR #35: Thirty five point eight.

MR. BURKETT: And your first week off you get called in here. Two new jurors, you've heard all the questions I've asked, correct?   Is there anything you want to tell me or any questions that you have about the questions that I asked?   No.   And you know no reason that you can't be fair to this young man, do you?

JURORS: No.

MR. BURKETT:   Thank you, I don't have anything further.

THE COURT: People pass for cause?

MS. KETTLER: Pass for cause.

MR. BURKETT: Yes, Judge.

THE COURT: Challenges to the Defendant.

MR. BURKETT: I don't have any.

THE COURT: Challenges to the People.

MS. KETTLER: The People would like to thank and excuse Mr. Franklin.

75

THE COURT: Thank you Mr. Franklin.

THE CLERK: Zina Danforth, D-A-N-F-O-R-T-H, seat number nine.

THE COURT: Ms. Danforth, what do you do for a living?

JUROR #12: I'm an occupational therapist.

THE COURT: Your first name is Zina?

JUROR #12: Yes.

THE COURT: And are you single or married?

JUROR #12: Single.

THE COURT: What town do you live in?

JUROR #12: Redford.

THE COURT: Have you ever been on a jury before?

JUROR #12: Yes.

THE COURT: How long ago?

JUROR #12: Ten years.

THE COURT: And was it civil or criminal?

JUROR #12: Criminal.

THE COURT: Did the jury reach a verdict?

JUROR #12: Yes.

THE COURT: Do you think you know any of the persons that have been introduced in this case?

JUROR #12: No.

THE COURT: Would you believe a police officer more than a civilian simply because they're a police officer?

JUROR #12: No.

76

THE COURT: Would you believe them less?

JUROR #12: No.

THE COURT: Have you ever been the victim of a violent crime?

JUROR #12: I was robbed in my back yard.

THE COURT: And was a weapon involved?

JUROR #12: Yes.

THE COURT: How long ago did that happen?

JUROR #12: About fifteen years ago.

THE COURT: Was anybody apprehended?

JUROR #12: No.

THE COURT: Do you think that, well, did you report the matter to the police?

JUROR #12: Yes.

THE COURT: Did you think they did their job?

JUROR #12: Yes.

THE COURT: Would you have any animosity toward the police or the prosecutor because no one was brought to trial in your case?

JUROR #12: No.

THE COURT: Can you think of any reason you would not be fair?

JUROR #12: No.

THE COURT: Questions for the People.

MS. KETTLER: Thank you, Judge.  Ms. Danforth, anybody in your family or, you said you were a victim of a crime, anybody in your family or close friends that's been a victim of a crime that you're aware of?

JUROR #12: Yes, my cousin was killed.

77

MS. KETTLER: Okay, do you think that, was somebody arrested?

JUROR #12: Yes.

MS. KETTLER: Okay, and do you think that the criminal justice system handled that well?

JUROR #12: Yes.

MS. KETTLER: Okay, so nothing about that would affect you being a juror in this case, is that right?

JUROR #12: Right.

MS. KETTLER: Okay, anybody, close friends or family members who have had unpleasant experiences with the police that you're aware of?

JUROR #12: Yes.

MS. KETTLER: What was that, what's the person or person's relationship to you?

JUROR #12: I have two cousins and a couple of friends.

MS. KETTLER: Okay, do you think, so you think these people, I don't want to go into all the different incidents but do you feel these people were treated unfairly by the police?

JUROR #12: Yes.

MS. KETTLER: Okay, and did this involve the Detroit Police?

JUROR #12: Yes.

MS. KETTLER: Okay, do you think that you can completely set aside your feelings about the police being unfair to your friends or family members if you're a juror in this case?

JUROR #12: Yes.

78

MS. KETTLER: Okay, that doesn't have anything to do with this case, is that right?

JUROR #12: Right.

MS. KETTLER: Okay. Do you think you're a good judge of whether people are telling the truth or not?

JUROR #12: Yes.

MS. KETTLER: And do you have any strong feelings about interracial dating?

JUROR #12: No.

MS. KETTLER: Okay, alright. Anything at all you think would keep you from being a fair juror?

JUROR #12: No.

MS. KETTLER: Thank you very much, ma'am.

THE COURT: Mr. Burkett.

MR. BURKETT: Ms. Danforth, how are you this morning?

JUROR #12: I'm fine.

MR. BURKETT: Ms. Danforth, you've already answered the questions but I just want to make sure that if you're selected on this jury, this gentleman here as far as you're concerned will start with a clean slate?

JUROR #12: Yes.

MR. BURKETT: And you heard me go through the things about me being lazy, me not doing anything?

JUROR #12: Yes.

THE COURT: And that wouldn't bother you, correct?

JUROR #12: No.

MR. BURKETT: I mean you probably wouldn't hire me but that still wouldn't bother you?

JUROR #12: No.

MR. BURKETT: Okay, and you wouldn't hold it against us?

JUROR #12: No.

MR. BURKETT: Alright, thank you.

THE COURT: People pass for cause?

MS. KETTLER: Yes, your Honor.

THE COURT: Defense pass for cause?

MR. BURKETT: I do.

THE COURT: Challenges to the defense.

MR. BURKETT: I don't have any.

THE COURT: Challenges to the People.

MS. KETTLER: We have none, thank you.

THE COURT: Ladies and gentlemen, thank you. You have to return to the first floor. Ladies and gentlemen, I indicated to you that the next I see you, yes?

JUROR #12: The time line, I won't be able to be here. Hang on, bring them back.

THE COURT: I guess when we asked you if you had any questions, what's the problem of -

JUROR #1: I have no one to take my son to school.

THE COURT: I'm sorry?

JUROR #12: I have no one to take my son to school. I'm a single parent, I have to drop him off at school.

80

THE COURT: What time?

JUROR #12: He has to be there at 8:20.

THE COURT: And where is the school?

JUROR #12: Lathrup Village Academy in Southfield.

THE COURT: Well then you come here.   I told you I need you at nine o'clock.

JUROR #12: Okay, I'll hope that I can get here.

THE COURT: Well we'll be tolerant.   I'm not going to send the cops for you if you're late one day.   But you'll try your best to drop your son off and then be here?

JUROR #12: Yes.

THE COURT: With that in mind, with that understanding, you can serve on the jury?

JUROR #12: Yes.

THE COURT: Pardon me?

JUROR #12: Yes.

THE COURT: Okay, you understand, nine to one everyday, that's all I need you.   Okay.   Thank you.   In any event, before you leave I'm going to give you some preliminary instructions.   I will not have the oath of jury service administered to you.   That will be done when you return on Thursday morning.   You can be seated.

I will now explain some of the legal procedures you need to know and the procedure to be followed in this trial.   Ms. Kettler will make an opening statement where she gives her theories of the case.   Mr. Burkett does not have to make an opening statement but he may make one after the prosecutor makes hers

81

or he may wait until later.   These statements are not evidence.   They are only meant to help you understand how each side views the case.

Next, the prosecutor presents her evidence.   The prosecutor may call witnesses to testify and may show you exhibits such as documents or objects.   Defendant's lawyer has the right to cross examine prosecutor witnesses. After the prosecutor has presented all her evidence, the Defendant's attorney may also offer evidence but does not have to.   By law the Defendant does not have to prove innocense or do anything.   If the defense does call witnesses, the prosecutor has the right to cross examine them.   The prosecutor may also call witnesses to contradict the testimony of the defense witnesses.

After all the evidence has been presented, the prosecutor and defendant's lawyer will make closing arguments.   Like opening statements these are not evidence.   They are only mean to help you understand the evidence and the way each side views the case.   You must base your verdict solely on the evidence.  My responsibility as judge in the trial is to be sure the trial is run fairly and efficiently, to make decisions about evidence and instruct you about the law that applies in the case.

You must take the law as I give it to you.   Nothing I say is meant to reflect my own opinion about facts in the case.   As jurors, you are the ones who will decide the case and reach a verdict.   Your responsibility is to decide the facts of the case.   This is your job and no one else's.   You must think about all the evidence and all the testimony, then decide what each piece of evidence means and how important you think it is.   This includes how much you believe what each of the witness's said.   What you decide about any fact in the case is final.

When it is time to decide the case, you are only permitted to

82

consider evidence that was admitted in the case.   Evidence includes only the sworn testimony of witnesses, exhibits admitted into evidence and anything else I tell you to consider as evidence.   You decide the facts of the case.   You decide the witnesses you believe and how important you think their testimony is.   You do not have to believe any or all of what a witness said.   You are free to believe all, none or part of any person's testimony.

In deciding the testimony you believe, rely on common sense and everyday experience.   However, in decide whether you believe a witness's testimony, set aside any bias or prejudice you may have based on race, gender or national origin of the witness.   There is no fixed set of rules for judging whether you believe a witness but it may help you think about these questions.   Was the witness able to see or hear clearly?   How long was the witness watching or listening?   Was anything else going on that might have distracted the witness?   Does the witness have a good memory?   How does the witness look and act while testifying?   Does the witness make an honest effort to tell the truth or does the witness evade questions or argue with the lawyers.   Does the witness's age or maturity affect how you judge his or her testimony?   Does the witness have any bias or prejudice or personal interest in how the case is decided?   Have there been any promises, threats, suggestions or other influences that affect how the witness testifies?   Does the witness have any special reason to tell the truth or any special reason to lie?   All in all, how reasonable does the witness's testimony seem when you think about all the evidence in the case?

Questions lawyers ask witnesses are not evidence.   Only the answers are evidence.   You should not think something is true because a lawyer asks a question that assumes or suggests it is true.   During the trial, the lawyers

may object to certain questions or statements made by other lawyers or witnesses. I will rule on these objections according to the law.  My rulings for or against one side or the other are not meant to reflect my opinion about facts in the case.

Sometimes lawyers and I have discussions out of your hearing. Please pay no attention to any of these interruptions.   Do not discuss the case with anyone including family or friends.   Do not even discuss it with other jurors until the time comes for you to decide the case.  When it is time to decide the case, I will send you to the jury room for that purpose.   Then you should discuss the case among yourselves but only in the jury room and only when all the other jurors are present.   When the trial is over, you may if you wish, discuss the case with anyone.

During recesses of the trial I will send you to the jury room or allow you to leave the courtroom on your own and go about your business.   Do not discuss the case with anyone or let anyone discuss it with you or in your presence. If someone tries to do that, tell him or her to stop and explain as a juror you are not permitted to talk about the case.   If she or he continues, leave and report the incident to me as soon as you return to court.

Do not talk with the Defendant, the lawyers or witness about anything at all even if it has nothing to do with the case.   It is very important you only get information about the case here in court when you are acting as the jury and when the Defendant, the lawyers and I are all present.   Do not go to the scene of the alleged crime.   Do not investigate anything about this case on your own.   Do not take notes while you are in the courtroom listening to the evidence.   If you take notes, you may not give full attention to the evidence as it is being presented.

You now know that there will be another jury hearing the case. At all times, you are the jury that is solely concerned with the actions or inactions or

84

whatever was done by Kyron Darell Benson.   Another jury will be attending to the facts in the co-defendant's case.   We have selected a jury of fourteen.   After closing arguments and all of the evidence and my instructions on the law, we will draw lots to decide which two of you will be dismissed in order to form a jury of twelve.

Possible penalty should not influence your decision.   It is my duty to fix penalty within the limits provided by law if this Defendant, Mr. Benson, is convicted of anything.   I may give you more instructions during the trial. At the close of the trial, I will give you detailed instructions about the law that applies in this case. You should consider all my instructions now, before and at the end as a connected series.   Taken together, my instructions are the law that you must follow.

After you have heard closing arguments and my instructions on the law, you will go to the jury room and decide upon your verdict.   A verdict in a criminal case must be unanimous.   That means every juror must agree on it and it must reflect the individual decision of each juror.   Keep an open mind and do not make a decision about anything in the case until I tell you to go to the jury room to decide the case and reach your verdict.

Ladies and gentlemen, the last thing I need you to do is to step into the jury room and there you will fill out a sheet for my eyes only.   It will contain the latest cell phone number for you or land phone, global positioning device, IPOD device, Raspberry, Blackberry, Blueberry or however someone contacts you, as I say, you will give that information to me and you will have a phone number to call if there's an emergency on your end.   If there is an emergency, someone is always here after seven in the morning.   Please call us.   Do not take it on yourself to excuse yourself from jury duty because then I have to send Officer Curtis here and

85

Officer Tillman in one of those cars with the lights on it and they have to park on your lawn and they have to turn the lights on and they have to turn the sirens on and find you.   So, if an emergency does arise, please call.   I can't take the call because you're a juror but someone will answer the phone and get a message from you to me.   Have a pleasant afternoon.   Be back here at 9:00 a.m. on Thursday morning. Do not discuss the case.   Thank you.

(Whereupon the jury was excused for the day)

(On the record without the jury)

THE COURT: Anything else from the People?

MS. KETTLER: No, your Honor.

THE COURT: From the defense.

MR. BURKETT: Your Honor, if I understand you correctly, you want the grandmother to be in Court Thursday morning?

THE COURT: Thursday morning is fine, yes.   Thank you.

MR. BURKETT: And as I told the prosecutor, I will produce her.

THE COURT: Thank you.

(Matter concluded)

86

STATE OF MICHIGAN )

COUNTY OF WAYNE    )


    I, Jeffrey B. Goldsmith, Official Court Reporter for the Third Judicial Circuit of Michigan, do hereby certify that I reported the foregoing proceedings before the Honorable

MICHAEL J. CALLAHAN, Circuit Judge on May 6, 2008; that the foregoing 98 pages constitute a true and correct transcript of the proceedings so held.




                  _____
                  Official Court Reporter
                  CSMR-0037

87

88