STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

PEOPLE OF THE STATE OF
MICHIGAN,

        Plaintiff,

-v-                    Case No. 07-024733-01 &
                                 07-024733-02

KYRON DARELL BENSON and
PAULA RENAI BENNETT,

        Defendants.

_____/

JURY TRIAL
VOLUME II

        Proceedings had before the

Honorable MICHAEL J. CALLAHAN, Judge of the Third Judicial

Circuit of Michigan, 703 Frank Murphy Hall of Justice,

Detroit, Michigan 48226, on May 7, 2008.

APPEARANCES:

                    MS. MOLLY KETTLER
                    Assistant Prosecuting Attorney

                      On behalf of the Plaintiff

                    MR. RAYMOND BURKETT
                    Attorney at Law

                      On behalf of Def. Benson

                    MR. WALTER A. WHITE
                    Attorney at Law

                      On behalf of Def. Bennett

                    Jeffrey B. Goldsmith
                    Official Court Reporter
                    CSMR-0037

<u>INDEX</u>

<u>WITNESS</u>                                                          <u>PAGE</u>

None


<u>EXHIBITS</u>                    <u>MARKED</u>                        <u>ADMITTED</u>

None

May 7, 2008

Detroit,                    Michigan

P R O C E E D I N G S

\*       \*       \*

THE COURT: This is People of the state of Michigan versus Paula Bennett.   Counsel.

MS. KETTLER: Good morning your Honor, Molly Kettler on behalf of the People of the state of Michigan.

MR. WHITE: Your Honor, for the record, Walter White appearing on behalf of Ms. Bennett who is here.

THE COURT: This is the time and date set for a trial by jury.  And the People are ready?

MS. KETTLER: Yes we are your Honor.

THE COURT: And the defense is ready?

MR. WHITE: We are your Honor,

THE COURT: And we'll select a jury of fourteen when we get a jury panel up.  When will that be Virginia?

THE BAILIFF: She went down, she'll be here maybe about fifteen more minutes.

THE COURT: I'm sorry, went down to?

THE BAILIFF: The jury commission.

THE COURT: And where is that?

THE BAILIFF: On the first floor.

THE COURT: Oh really, in this building?

THE BAILIFF: I think so.

3

THE COURT: Well one of the things that one learns in my job is patience.

THE BAILIFF: Yes, patience is a virtue your Honor.

     -   -   -

THE COURT: There's another jury chosen in the Kyron Darell Benson so we'll draw the jury this morning and I will give them instructions and then bring both juries back tomorrow and begin with opening instruction.  Neither jury will be sworn until tomorrow morning.  And then the case will try nine to one on Thursday and nine to one on May 12th, 13th, 14th and 15th.  Is that enough time?

MS. KETTLER: I certainly think so your Honor.

THE COURT: Enough time?

MR. WHITE: I hope so your Honor.

THE COURT: Hope, okay.

MS. KETTLER: From my perspective, it's enough time.

THE COURT: Call me when the jury's ready.

THE BAILIFF: You'll be the first one.

     -   -   -

THE COURT: Good morning ladies and gentlemen. My name is Judge Michael Callahan and you've been brought here possibly to serve as jurors in a criminal case.  Let me tell you something about this case because it will concern you in terms of the length of service.  This is a case that involves two defendants.  Each defendant is entitled to a separate jury.

4

Yesterday we drew a jury for the defendant that has been charged in this case.  Today we will draw a jury for this Defendant, Paula Renai Bennett.

We will spend the morning drawing the jury and the case will begin tomorrow morning.  I will try the case between the hours of nine and one, tomorrow Thursday.  And then next week, the 12th, 13th, 14th and 15th of May between the hours of nine and one.  When you're in the jury box, I will ask you if that duty presents an unreasonable burden for you.  And it is then that I will assess whether or not the burden is truly unreasonable.

I know that jury service may be a new experience for many of you but jury duty is one of the most serious duties that members in a free society are asked to perform.  Our system of self government cannot exist without it.  The jury is an important part of this court.  The right to a jury trial is an ancient tradition and part of our heritage.  The law provides that both a person accused of a crime and the defendant has the right to a trial not by one person but by a jury of twelve impartial people.

Jurors must be free as humanly possible from bias, prejudice or sympathy for either side.  Each side in a trial is entitled to jurors who keep open minds until a time, until it comes time to decide the case.  During jury selection, the lawyers and I will ask you questions.  These are meant to find out if you have any opinions about the case, if you know anything about the case,

5

if you have personal experiences that might influence you for or against the prosecution, the defendant or any witnesses.  One or more of these things could cause you to be excused in this particular case even though you may be a fit juror for another case.

The questions may probe deeply into your attitudes, beliefs and experiences but are not meant to be an unreasonable prying into your private life.  The law provides we get this information so an impartial jury can be chosen.  If you do not hear or understand a question that is asked of you, please say so.  If you do understand it, answer it truthfully and completely.

You may be excused in one of two ways.  Either I may decide there's a legal reason why you cannot serve or the lawyer for one side or the other may excuse a limited number of you without giving any reason for doing so.  This is called the peremptory challenge.  If you are excused, do not take it personally nor feel bad.  As I explained before, there may be something that causes you to be excused in this particular case.  I'll ask all of you now to stand and raise your right hands to swear or affirm an oath.

(Whereupon the jurors were sworn by the clerk)

THE COURT: And now if you follow the direction of the officers, you'll be seated, the names of fourteen of you will be called, will be seated in the seats one through fourteen.

THE CLERK: Carol Shivers,  S-H-I-V-E-R-S,  seat number one.

THE COURT: Is that how you say your name?

6

JUROR #39: That's correct.

THE CLERK: Anna Duba, D-U-B-A, pronounce the last name, please.

JUROR #10: Duba.

THE CLERK: Seat number two.  James Harvey, H-A-R-V-E-Y, seat number three.   Ashley Layne, L-A-Y-N-E, pronounce your last name.

JUROR #27: Layne.

THE CLERK: Seat number four.   Nicholas Miekstyn, M-I-E-K-S-T-Y-N, pronounce your last name, please.

JUROR #29: Miekstyn.

THE CLERK: Seat number five.   Michael Pruneau, P-R-U-N-E-A-U, pronounce your last name, plese.

JUROR #33: Pruneau.

THE CLERK: Seat number six.   Rhea Jordan, first name, R-H-E-A, J-O-R-D-A-N.   Pronounce your name, please.

JUROR #23: Rhea Jordan.

THE CLERK: Seat number seven.   Susan Belcher, B-E-L-C-H-E-R, seat number eight.   Allen Chiu, C-H-I-U.

JUROR #8: Chiu.

THE CLERK: Pronounce it again, please.

JUROR #8: Chiu.

THE CLERK: Thank you, seat number nine.   Edward Knox, K-N-O-X, seat number ten.   Paul Petrucci, P-E-T-R-U-C-C-I, please pronounce your name.

JUROR #32: Paul Petrucci.

8

THE CLERK: Seat number eleven.   Patrick Dorn, D-O-R-N, seat number twelve.   Wendy Gibson, G-I-B-S-O-N, seat number thirteen.   Carol Borczak, B-O-R-C-Z-A-K, pronounce the last name.

JUROR #4: Borczak.

THE CLERK: I'm sorry, thank you, seat number fourteen.

THE COURT: Ladies and gentlemen, I'm going to begin the selection of the jury by introducing some persons to you.   Ms. Kettler is the Assistant Prosecuting Attorney.   She represents the People, if you'd introduce yourself, your witnesses and your officer in charge.

MS. KETTLER: Thank you your Honor.   Good morning ladies and gentlemen.   As the Judge said, I'm Molly Kettler.   It's my job to prosecute this case.   With me at the table is Detective John Toth from Sumpter Township.   He'll be assisting me sometimes in the courtroom, sometimes outside.   The following are possible witnesses.   It's a lengthy list.   Don't panic, they won't all be called but they're possible.   Dr. Scott Somerset or another representative of the Wayne County Medical Examiner's office, a Virginia McClure or another identifier, that actually would be Fred Watson, Officer Adam Byrd from Van Buren Township Police Department, Heaven Kindall, Officer Jablonski, Corporal Luke, Officer Sharp, Officer Byrne, Ron Hayes, Minor Rodriguez, Breanna Kandler, Jessica Fritz, Kathleen McIntyre, Rita Merry, Richard Wren, Corporal Gannon, Susan DuFresne, Detective Toth, Christina Simon, the mother of Kathleen McIntyre, Jessica Bennett, Jon Paul Steffes, Officer Cayce, Officer Lange, Officer Egerer, a custodian of records from the Wayne County Jail, that will probably be Lieutenant Wood, Detective Bryan White from the Wayne County Prosecutor's Office, a chemist, a forensic scientist from the Michigan State Police, a firearms examiner from the Michigan State Police, Trooper

9

Guy Nutter, Mike Larvaidan, Bruce Hesterly, Chris Lay, Corporal McGlynn, Ordinance Officer Lynch, Corporal Czinski and Trooper Wade Higgason, also from the Michigan State Police Lab.

THE COURT: Ladies and gentlemen, do any of you think you know any of these people who have been named, raise your hand. Mr. White represents the Defendant, if you'd introduce yourself and your client.

MR. WHITE: Thank you your Honor. My name is Walter White. I'm a private attorney in Belleville, Michigan. My partners are John Evanchek and Brad Kelly. This is my client, stand up, please, Paula Bennett. Thank you.

THE COURT: Do you think you know either of those persons, raise your hand. Have any of you ever served on a jury before, raise your hands. And beginning with Ms. Shivers, how long ago, ma'am?

JUROR #39: It's been a very long time, I can't even remember, at least five years.

THE COURT: Was it a civil or criminal case?

JUROR #39: It was criminal.

THE COURT: Did the jury reach a verdict?

JUROR #39: Yes.

THE COURT: Anyone else in the front row? Second row? Ms. Jordan, how long ago, ma'am?

JUROR #23: It was probably four years ago.

THE COURT: Civil or criminal case?

10

JUROR #23: A criminal case.

THE COURT: Did the jury reach a verdict?

JUROR #23: I was picked as the alternate so I was dimissed.

THE COURT: Ms. Belcher, how long ago?

JUROR #2: Three years ago.

THE COURT: And was it a civil or criminal case?

JUROR #2: Civil.

THE COURT: I'm sorry?

JUROR #2: Civil.

THE COURT: Did the jury reach a verdict?

JUROR #2: We did.

THE COURT: Anyone in the back row, jury duty?

Do any of you have any religious beliefs that prevent you serving on a jury?   Do any of you have any health problems that prevent you serving for the time I outlined? And what is that Ms. Belcher?

JUROR #2: I'm ten days out of the hospital with acute pancreatitis.   I'm still being diagnosed with.

THE COURT: Well is your health such that you can't serve?

JUROR #2: I'm concerned about the length of the trial.

THE COURT: I've told you the length, you have to tell me.

JUROR #2: I'm not sure I'm up to it.

THE COURT: I'll excuse you, you can go back to one.

JUROR #2: Thank you.

THE COURT: Yes, you're welcome.

THE CLERK: Keith Vaughn, V-A-U-G-H-N, seat number eight.

11

Pronounce your last name.

JUROR #41: Vaughn.

THE CLERK: Thank you.

THE COURT: Mr. Vaughn, do you think you know any of the persons who have been introduced?

JUROR #41: No.

THE COURT: Have you ever served on a jury before?

JUROR #41: No.

THE COURT: Do you have any health problems that prevent you serving?

JUROR #41: No.

THE COURT: Do you have any religious beliefs that prevent you serving?

JUROR #41: None.

THE COURT: Now I'll go to everyone, let me review for you the time that I need the jurors in this case. I will try it between the hours of nine and one Thursday, and then next Monday, Tuesday, Wednesday and Thursday. The question then becomes does that present an unreasonable burden for any of you, raise your hand? Ms. Duba, what's the problem?

JUROR #10: Your Honor, I'm a nurse case manager for a rehab facility. Next week is Nursing Home Week and I have the state of Michigan in my building for our annual surveys.

THE COURT: So it's good for you to be someplace else.

JUROR #10: It's good for me to be with them.

THE COURT: Well who is your employer?

12

JUROR #10: I work for Maple Manor and my employers are Filipino and they are getting ready for mission work in the Philippines so they will not be able to be there.

THE COURT: Well what is your function in the clinic?

JUROR #10: I'm a case manager.   I'm a nurse, I'm also the case manager.   I'm the manager of the building.

THE COURT: And what goes on in the building?

JUROR #10: Maple Manor is a subacute rehab center.   We are medicare certified and I take care of all the people coming in and going out and manage the nurses.

THE COURT: I'll excuse you.   You can go back to one.   Mr. Chiu, what's the problem?

JUROR #8: Two reasons; one is we have a baby due this month and the second one is well next week I have a few jobs that are due that are really important.

THE COURT: What kind of jobs?

JUROR #8: National Guard, had this item from my company. I'm the only one there so they rely on me to get the drawings finished.   Several of the jobs are due next week.

THE COURT: When is this baby due?

JUROR #8: The baby's due the end of this month.

THE COURT: Well, any reason to believe the baby will be early?

JUROR #8: I don't know.

THE COURT: That's known only to God at this point.   Anyone else?   Yes, Ms. Borczak?

13

JUROR #4: I'm a B shift.  I work 7:00 p.m. to 7:00 a.m. so like right now is like my nighttime.  So I'm afraid that might affect my -

THE COURT: Well where do you work?

JUROR #4: At Henry Ford Wyandotte Hospital.

THE COURT: So you say if you serve on the jury, you'll fall asleep or something?

JUROR #4: I don't know if I'll sleep but I might not have a hundred percent attention span.  Like right now is my morning.  I can't go, some girls go back and forth.  I can't. I'm strictly, I stay up til four o'clock in the morning.

THE COURT: Alright, I heard you.  Anyone else?  We can pull seat number eight.  Oh I'm sorry, seat number eight, what am I talking about, seat number two.  Mr. Vaughn is in seat number eight.

THE CLERK: Janet Bryant, B-R-Y-A-N-T, seat number two.

THE COURT: Ms. Bryant, do you think you know any of the persons who have been introduced?

JUROR #6: No.

THE COURT: Can you be with us during the time that I outlined?

JUROR #6: Yes.

THE COURT: I'm sorry?

JUROR #6: Yes.

THE COURT: I'm now going to read to you, ladies and gentlemen, a document that is known as an Information.  An Information is filed in every criminal case so that the defendant the jury may be apprized of the nature of the charges.  This Information charges People of the state of Michigan versus Paula Renai Bennett, that on October the 6th, 2007 at 372 Utah in the Township of

14

Sumpter, that the Defendant did deliberately with the intent the kill and with premeditation kill and murder one Stephanie McClure.

The Defendant has pled not guilty to this charge.  You should clearly understand the Information that I have read is not evidence.  An Information is read in every criminal trial so that the defendant and jury may hear the charges. You must not think it is evidence of her guilt or that she must be guilty simply because she has been charged.  Every person accused of a crime is presumed to be innocent.  This means you must start with the presumption that the Defendant is innocent.  This presumption continues throughout the trial and entitles the Defendant to a verdict of not guilty unless you are satisfied beyond a reasonable doubt that she is guilty.

Every crime is made up of parts called elements.  The prosecutor must prove each element of the crime beyond a reasonable doubt.  The Defendant is not required to prove or innocense or do anything.  If you find the prosecutor has not proven every element beyond a reasonable doubt, then you must find the Defendant not guilty.  A reasonable doubt is a fair, honest doubt growing out of the evidence or lack of evidence.  It is not an imaginary or possible doubt but a doubt that is based on reason and common sense.  A reasonable doubt is just that, a doubt that is reasonable after a careful and considered examination of the facts and circumstances in this case.

Is there anyone who could not or would not follow those three principles of law, raise your hand?  I'm now going to read to you another legal concept that is pertinent in this case and I will ask you after I read this law to you if there's anyone who would not follow this law.   In this case, the Defendant is charged either with committing the crime of murder in the first degree or intentionally assisting

15

someone else in committing that crime.

Anyone who intentionally assists someone else in committing a crime is as guilty as the person who directly commits the crime and can be convicted of that crime as an aider and abettor.  Is there anyone who would not follow that law?  Additionally, it does not matter how much help or advice or encouragement the Defendant gave.   However, you must decide whether the Defendant intended to help another commit the crime and whether her help or advise or encouragement did actually help or advise or encourage the crime.   Is there anyone who could not follow that law?

Additionally, even if the Defendant knew the alleged crime was planned or being committed, the mere fact that she was present when it was committed is not enough to prove that she assisted in committing it.   Is there anyone who could not follow that law, raise your hands?   Ms. Shivers, what do you do for a living?

JUROR #39:  I'm an administrative assistant at Cranbrook School District.

THE COURT: Are you single or married?

JUROR #39: Married.

THE COURT: What does your husband do?

JUROR #39: He's an engineer.

THE COURT: And what town do you live in?

JUROR #39: Detroit.

THE COURT: Ms. Bryant, what do you do for a living?

JUROR #6: I'm retired.

THE COURT: From?

16

JUROR #6: I was in human resources.

THE COURT: Where?

JUROR #6: At Personnel Unlimited.

THE COURT: And are you single or married?

JUROR #6: I'm married.

THE COURT: What does your husband do?

JUROR #6: He's a retired employee from Blue Cross.    He's now back as a contractor.

THE COURT: And what town do you live in?

JUROR #6: Northville.

THE COURT: Mr. Harvey, what do you do for a living?

JUROR #18: I'm retired.    I retired from Ford Motor Company.

THE COURT: Are you single or married?

JUROR #18: Married.

THE COURT: And what does your wife do?

JUROR #18: She's a teacher.

THE COURT: And what town do you live in?

JUROR #18: I live in Plymouth Township.

THE COURT: Ms. Layne, what do you do for a living?

JUROR #27: I work at a daycare center and attend Henry Ford Community College.

THE COURT: And are you single or married?

JUROR #27: Single.

THE COURT: What town do you live in?

JUROR #27: Ecorse.

THE COURT: What do you study at community college?

JUROR #27: Early Childhood Development.

THE COURT: Mr. Miekstyn, is that how you say your name?

JUROR #29: Yes sir.

THE COURT: Mr. Miekstyn, what do you do for a living?

JUROR #29: I'm a software designer.

THE COURT: Are you single or married?

JUROR #29: Married.

THE COURT: What does your wife do?

JUROR #29: Stay at home mom.

THE COURT: What town do you live in?

JUROR #29: City of Canton.

THE COURT: Mr. Pruneau, what do you do for a living?

JUROR #33: Service and repair Sprint wireless phones.

THE COURT: Are you single or married?

JUROR #33: Single.

THE COURT: What town do you live in?

JUROR #33: Lincoln Park.

THE COURT: Ms. Jordan, what do you do for a living?

JUROR #23: Occupational Therapist at Oakwood Hospital.

THE COURT: Are you single or married?

JUROR #23: Married.

THE COURT: What does your husband do?

JUROR #23: He works for Mazda in Detroit.

THE COURT: And what town do you live in?

18

JUROR #23: Woodhaven.

THE COURT: Mr. Vaughn, what do you do for a living?

JUROR #41: Work for Chrysler Corporation.

THE COURT: Single or married?

JUROR #41: Married.

THE COURT: What does your wife do?

JUROR #41: Administrative Assistant.

THE COURT: For?

JUROR #41: For a fundraising development group.

THE COURT: And what town do you live in?

JUROR #41: Detroit.

THE COURT: Mr. Chiu, what do you do for a living?

JUROR #8: Cad Designer.

THE COURT: I'm sorry?

JUROR #8: Cad Designer.

THE COURT: And now did you indicate to me when you expressed concern about the time of service that you were the only one at your place of business?

JUROR #8: Yes.

THE COURT: And I know, well, you're married expecting a child, correct?

JUROR #8: Right.

THE COURT: What town do you live in?

JUROR #8: Taylor

THE COURT: And aside from, well, I doubt if your wife is working

19

now, right?

JUROR #8: She is actually is still working.

THE COURT: Oh, what does she do?

JUROR #8: She's a customs team leader for importing sporting goods from FedEx.

THE COURT: And as they get closer to the birth of your child, will you be furnished some kind of beeper so that you know when to leave?

JUROR #8: Well I've got a phone that she calls me on but I don't have the phone with me.

THE COURT: Well make sure you do.   Mr. Knox, what do you do for a living?

JUROR #25: I'm a delivery driver for a delivery service.

THE COURT: Single or married?

JUROR #25: Single.

THE COURT: What town do you live in?

JUROR #25: Lincoln Park.

THE COURT: Mr. Chiu, did I ask you what town you lived in?

JUROR #8: Taylor, yes.

THE COURT: Thank you.   Mr. Petrucci, what do you do for a living?

JUROR #32: I work for General Dynamics.

THE COURT: Single or married?

JUROR #32: Married.

THE COURT: What does your wife do?

JUROR #32: She is a teacher for the -- Academy of Performing

20

Arts.

THE COURT: What town do you live in?

JUROR #32: Canton.

THE COURT: Mr. Dorn, what do you do for a living?

JUROR #32: Director of Cass Corridor Neighborhood Development Corporation.

THE COURT: Single or married?

JUROR #32: Married.

THE COURT: What does your wife do?

JUROR #32: Nurse.

THE COURT: And what town do you live in?

JUROR #32: Detroit.

THE COURT: Ms. Gibson, what do you do for a living?

JUROR #15: I'm a registered nurse.

THE COURT: Are you single or married?

JUROR #15: Single.

THE COURT: I'm sorry?

JUROR #15: Single.

THE COURT: What town do you live in?

JUROR #15: Westland.

THE COURT: Wayne?

JUROR #15: Westland.

THE COURT: Westland.  Ms. Borczak, what do you do for a living?

JUROR #4: I'm a registered nurse.

21

THE COURT: Oh, that's right.   And who's your employer?

JUROR #4: Henry Ford Wyandotte Hospital.

THE COURT: Single or married?

JUROR #4: Married.

THE COURT: What does your husband do?

JUROR #4: Truck driver.

THE COURT: And what town do you live in?

JUROR #4: Lincoln Park.

THE COURT: Okay, ladies and gentlemen, I'm going to have the lawyers, or the lawyers will be able to ask you questions now.   They can go into areas that I've explored or they can go into new areas.   However, they can't discuss with you nor do I care whether we should have jury trials or whether we should have, this justice system has nothing to do with this case.   Ms. Kettler, go ahead.

MS. KETTLER: Thank you your Honor.   Good morning again, ladies and gentlemen.   First I want to get started off by saying that nothing I ask you is meant to be intrusive or pry into your personal business.   However, it may seem that way to you but my only interest, I assure you, is in trying to get fair jury.   And I apologize in advance if it seems intrusive.   First of all, excuse me, I have a cold. First of all, I'm going to ask some individual questions and then I'm going to ask the group some questions.   Mr. Harvey, you said you're retired from Ford, is that correct?

JUROR #18: That's correct.

MS. KETTLER: And what did you do there?

JUROR #18: I was a systems analyst.

MS. KETTLER: Okay, is that an engineer?

22

JUROR #18: No, it's a business position.

MS. KETTLER: Business.

JUROR #18: Computers.

MS. KETTLER: Okay, and Ms. Jordan, your husband works at Mazda, is that correct?

JUROR #23: Yes.

MS. KETTLER: And what does he do there?

JUROR #23: He does inventory control for buying parts.

MS. KETTLER: Okay, thank you.   And Mr. Vaughn, you indicated that your wife is employed at a fundraising or a development organization?

JUROR #41: Yes.

MS. KETTLER: What organization is that?

JUROR #41: ACS.   They call for different fundraising groups like ARC, Cancer Fund, stuff like that and ask for donations.

MS. KETTLER: Okay, nothing political?

JUROR #41: No.

MS. KETTLER: Okay, thank you.   And let's see here, Mr. Vaughn, also I wanted to ask you, you said you work at Chrysler.   What do you do there?

JUROR #41: Team member.

MS. KETTLER: Okay.   Let's see here, Mr. Petrucci, did I say that correctly?

JUROR #32: Close enough.

MS. KETTLER: Thank you, you work at General Dynamics and what do you do there?

23

JUROR #32: I'm a mechanic, that will probably be easier for you.

MS. KETTLER: Okay, that's great.   And I have asked you some questions about what you do for a living and/or what your spouse's do for a living. So let me ask you this while we're kind of on this subject.   One of the things I expect the Judge will tell you is that if you're selected to be a juror in this case, you can't discuss this case with other people; in other wards, you know, maybe get their input about what do they think about it or things like that.   Does anybody think it would be too difficult for them to refrain from speaking with a spouse or friends or anything like that?   Raise your hand if you think that would be a problem for you.   Okay, I see no hands, thank you.

First of all, let me ask you  is there anybody on the panel who has ever been either arrested or, and/or charged with a crime?   Raise your hand if so.   Okay, I see no responses.   And I want to expand that a little bit and ask whether any of you have had some kind of unpleasant experience with the police, you know, less than being arrested or charged with a crime.   And you're not going to offend me, there's no right or wrong answer.   I've had bad experiences with the police.   Maybe you think they were rude when they pulled you over for speeding -

THE COURT: Counsel, can the jury answer?

MS. KETTLER: Sure, anything like that?   Sorry, Judge, anything like that, raise your hand.   Okay.   What about, are you aware of anyone else in your family or close friends who have had unpleasant experiences with the police.   Raise your hand if there's anybody that you feel, that you're aware of in your friends or close family members?   Okay, I see no responses.   Anybody had a close friend or family member a victim of violent crime?   Anyone?   No one?   Okay, what about yourself, anybody on the panel been a victim of a violent crime?   Okay, I see

24

no responses.   Alright, I want to ask some of you in particular, let me ask you Ms. Gibson, is that how you pronounce your name?

JUROR #15: Gibson.

MS. KETTLER: Gibson, I'm sorry.   Ms. Gibson, would you agree that there are some people in this world that are better than others at telling whether or not people are telling the truth, judging credibility?

JUROR #15: I think there are, yes.

MS. KETTLER: Okay.   Do you think that you are a person who has pretty good skills at judging whether people are telling the truth or not?

JUROR #15: Yes.

MS. KETTLER: Okay, is that a skill that you use in your life everyday?

JUROR #15: Not everyday.

MS. KETTLER: But it is a skill that you use in your life at time, would that be correct?

JUROR #15: Yes.

MS. KETTLER: Okay.   And what about you, Ms. Borczak? Do you agree that some people are better at that than others?

JUROR #4: Yes.

MS. KETTLER: Okay, do you think you're a good, pretty good judge of whether people are telling the truth?

JUROR #4: Not really, no.

MS. KETTLER: Well, you think maybe -

JUROR #4: Pain medicine, I don't know if they're in pain.   I've got to believe them that they are in pain so I give it to them.

25

MS. KETTLER: Okay, alright, so you think maybe you're not quite as good as maybe some other people at that? Thank you. Mr. Dorn, what about you? You think you're a good judge of credibility?

JUROR #9: Average.

MS. KETTLER: Okay, do you think it's something, it's a skill that you use in your everyday life?

JUROR #9: Yes.

MS. KETTLER: Okay. Mr. Petrucci, again, and I'm sorry if I mispronounced your name. Are you good at judging credibility of people?

JUROR #32: Yes.

MS. KETTLER: Okay, and what about you, Mr. Knox?

JUROR #25: Average.

MS. KETTLER: Okay, Mr. Chiu, is that a skill that you use in your everyday life?

JUROR #8: No.

MS. KETTLER: Okay, do you think you're good, a relatively good judge at trying to tell whether people are telling the truth or not?

JUROR #8: I think probably not.

MS. KETTLER: Okay, fair enough. Mr. Miekstyn, you think you're a good judge of whether people are telling the truth or not?

JUROR #29: Yes ma'am.

MS. KETTLER: Okay. And Mr. Pruneau, do you think you're good at that?

JUROR #33: I'm probably average.

MS. KETTLER: Alright, Ms. Jordan, are you a good judge of

26

whether people are telling the truth or not?

JUROR #23: I think so.

MS. KETTLER: Okay.   Is it a skill that you use in your regular life outside being a juror?

JUROR #23: I don't think that I would use it everyday.

MS. KETTLER: Okay, who has kids on the panel?   Raise your hands if you have children, whether grown or young?   Okay, for those of you who have kids and you, did you raise your hand?   Is that, I'm not going to say your kids are, you know, pathological liars or something but kids fib sometimes, right?

JUROR #23: My daughter's only two so she really doesn't.

MS. KETTLER: Okay, not yet.   Who has an older child?   Okay, Mr. Vaughn, let me ask you.   How old are your children?

JUROR #41: Twenty six.

MS. KETTLER: Okay, and son or daughter?

JUROR #41: Son.

MS. KETTLER: And as your son was growing up, did he from time to time tell fibs?

JUROR #41: Yes.

MS. KETTLER: Okay, and were you pretty adept at being able to determine when that was going on?

JUROR #41: Yes.

MS. KETTLER: Okay, fair enough.   So you think you're a pretty good judge of that with regard to other people, not just your kids?

JUROR #41: Yes.

MS. KETTLER: Okay.   Ms. Layne, you work with children, is

27

that right?

JUROR #27: Yes.

MS. KETTLER: How old are they?

JUROR #27: Six weeks to five years.

MS. KETTLER: Okay, I'm not an expert on child development but I'd say at five, do they maybe start fibbing a little bit sometimes?

JUROR #27: At four.

MS. KETTLER: Okay, maybe when they get caught doing something they're not supposed to do?

JUROR #27: Yes.

MS. KETTLER: Okay, and do you think you're a pretty good judge of when people are telling the truth or not?

JUROR #27: Yes.

MS. KETTLER: Okay, what about you, Mr. Harvey, are you pretty good at it, you think?

JUROR #18: I'm average.

MS. KETTLER: Okay, and Ms. Bryant, I don't think I asked you, are you confident in your ability to determine whether people are telling the truth or not?

JUROR #6: I am.

MS. KETTLER: Okay.  And what about you Ms. Shivers?

JUROR #39: Yes.

MS. KETTLER: Okay, now I think almost all of you raised your hands that you have children.  So I want to ask you about a topic that's kind of related to that at this point in time.  I need each and every one of you to look at this

28

young lady, relatively young lady and I need you to look in your heart and ask yourself and then I'm going to ask you, can you decide this case without regard to sympathy?   In other wards, if you go back in that jury room, you've heard th evidence, you've heard the law that the Judge gives you, and you believe that she has been proven beyond a reasonable doubt, can you convict her?   Show of hands of who can do that?   Okay, is there anybody, can you convict her if you believe she's guilty beyond a reasonable doubt?

JUROR #33: Yes.

MS. KETTLER: Okay, do you think that it might occur to you that she is such a young woman and she has made such a terrible mistake and this is a very serious crime, I would like to give her a break even though I believe she's proven guilty beyond a reasonable doubt?   Maybe that comes into your mind.   Do you think that might come into your mind, Mr. Vaughn?

JUROR #41: I believe it might.

MS. KETTLER: Okay, does that mean you will act on it?

JUROR #41: No.

MS. KETTLER: Okay, does your mind have the ability to override that human emotion of maybe I feel a little bit sorry for her?

JUROR #41: No.

MS. KETTLER: You don't think you could overcome that feeling of sympathy for her?

JUROR #41: Oh yes, I'm sorry.

MS. KETTLER: Okay, so you feel, I know sometimes my questions get a little convoluted, but you feel confident that if I prove beyond a reasonable doubt that she is guilty of aiding and abetting in this crime, you feel

29

confident that you can convict her regardless of her youth?

JUROR #41: Yes.

MS. KETTLER: Okay.  Is there anybody who thinks they have a problem with that, it's very important.   Raise your hand if so.   There are not any wrong answers.   Okay.   Somewhat related subject to that, the Judge has touched on this briefly but I want to go into it a little more deeply.   The concept of aiding and abetting, the Judge has discussed with you and you have said that you can follow the law that someone who knowingly assists in the commission of a crime is just as guilty as the person who, the principal, the actual committer of the crime.   You've all said you can follow that law.   Who thinks it's not really fair, and no wrong answers here.   I just want you to be candid with me.   Is there anybody who doesn't think that's fair.   Okay.

JUROR #9:  Something, that I think brainwashing is involved, then I would.

MS. KETTLER: Okay, I'm glad you brought that up cause I want ask about some other issues relative to that.   But let me just finish up with this first. Let's say, I'm going to ask you a hypothetical question at this point and ask how you would feel about this.   Mr. Dorn, let's say that you hear evidence that someone has given someone directions on how to get to a place where someone will be.   And someone else then shoots that person, okay?   And let's also say that during the time they're driving to that place, you hear evidence that the person who's being driven there is repeatedly saying, I'm going to kill that girl.   But she's not the person who pulls the trigger but she drives him there knowing that.   Do you think that would be fair to hold that person just as accountable as our law provides?

JUROR #9: Assuming that the person isn't one that exaggerates

30

all the time so you wouldn't necessarily believe a person -

MS. KETTLER: Okay, now you raised this issue of brainwashing and I want to ask you, I want to kind of go off on another area at this point.   And remember that I told you   I apologize if these questions become personal but I need to talk about what is kind of a sensitive subject and that is interracial dating.   Is there anybody on the panel, and there are no wrong answers, who has strong opinions that interracial dating is wrong?   For example, a black man dating a white woman. Is there anybody that feels that way?   Okay.   Let me leave it a little bit more open and ask some people how they feel about that.   Mr. Harvey, how do you feel about that?

JUROR #18: I'm okay with that.

MS. KETTLER: Okay, Ms. Shivers, how do you feel about that?

JUROR #39: It's fine with me.

MS. KETTLER: Okay, I know this isn't easy to talk about so I thank you for being open about it.  Mr. Petrucci, do you have any strong feelings about that?

JUROR #32: Not really.

MS. KETTLER: Okay.  Let me ask you this now.  Let us suppose that, who on the panel has ever known, let's say a woman, for the sake of this example, who repeatedly goes back to or stays with someone who treats them very poorly?  Has anybody known somebody like that?  Okay, let me ask you, ma'am, do you think that shows good judgment?

JUROR #27: No.

MS. KETTLER: Okay, but do you sometimes feel sorry

31

for the person who does that because they love him so much?  Do
you kind of feel sorry for them even though they keep doing it
to themselves?

        JUROR #27: Yes.

        MS. KETTLER: Even though you may feel -

        THE COURT: Hang on, I didn't hear the answer.

        JUROR #27: I'm sorry?

        THE COURT: I didn't hear the answer.

        JUROR #27: A little.

        MS. KETTLER: Okay, even though you may feel a little
sorry for that person, do you feel that person is still responsible
for the consequences of what they choose to do?

        JUROR #27: Yes.

        MS. KETTLER: Okay, is there anybody who thinks that
well, you know, maybe you can't really blame somebody that has
such bad judgment for what they do later?  Anybody think they may
kind of have that feeling?  Alright, why do you feel that way,
Mr. Dorn?

        JUROR #9: Because I think certain individuals have
a great ability to brainwash other people.  They're not really
responsible for what they're doing.

        MS. KETTLER: Alright, fair enough.  Is there
anybody on the panel that agrees with Mr. Dorn?  Is there, can
I get a show of hands of who on this panel thinks that people are
responsible for what they do no matter, you know, if somebody tries

to persuade or not?  Are you ultimately responsible for what you do?  Raise your hand if you believe that.  Okay.  Who watches these programs on tv like CSI, Law and Order, things like that?  Raise your hand if you watch those programs.  Okay, for each of you who raised your hand, let me pick on some individuals.  Ms. Bryant, do you think those shows are realistic?

JUROR #6: No.

MS. KETTLER: Okay, you think maybe parts of them are realistic?

JUROR #6: Yeah.

MS. KETTLER: Okay, who else raised their hand? Mr. Petrucci, did you raise your hand?

JUROR #32: No.

MS. KETTLER: Mr. Knox?

JUROR #25: Yes.

MS. KETTLER: Okay, do you think they're realistic?

JUROR #25: Partially, yes, partially no, some are just, you know –

MS. KETTLER: Okay, regardless of, for all of you who watch those, regardless of whether they're realistic in total or partly or not at all, can you put what you see on tv out of your mind if you're selected to be on this jury and go back in that jury room?  Does anybody think they'd have a problem with that?  Okay, I see no hands.  Ms. Gibson, were you one of the people that raised your hand, that you watched those programs?

33

JUROR #15: Um-hm.

MS. KETTLER: Okay, let's say this, let's say that you have heard all the evidence in this case, you hear the law that the Judge gives you that you must apply to this case and you go back in the jury room and you say well, I saw a particular kind of forensic test on tv that they can do and I wonder why they didn't do that in this case? Would that be a proper thing for you to consider in doing this case?

JUROR #15: No.

MS. KETTLER: Because why? Why would that not be proper?

JUROR #15: I have to work with what I'm given.

MS. KETTLER: Okay, fair enough. What about things you've read in the paper? Would it be proper, can anybody think of something they've read in the paper or seen on tv that it would be appropriate to discuss in the jury room with regard to this case, deliberating in this case? Anyone think so, raise your hand if so? That reminds of another thing I want to ask you about. Is there anybody on the panel who has strong feelings about any of the cases, not mentioning any names, that my office is currently engaged in? Well what the heck, we'll mention it. I'm sure everybody, unless you've been living under a rock, you've heard about the Kwame Kilpatrick case, correct? Anybody not heard of it? Okay, does anybody on the panel have a strong feeling that either my office is great and I'm really gung ho or you think my office is doing a bad thing? Okay, raise your hand. Okay, you have a strong opinion which way?

JUROR #41: That your office is doing a good job.

MS. KETTLER: Okay. Regardless of whether I agree with you

34

or not, because I can't get into that, would it be proper for you to consider that in any way if you're on the jury?

JUROR #41: No.

MS. KETTLER: Okay, so you go back and say well they're the prosecutors and I think Kym Worthy is great so let's give them the benefit of the doubt.   That wouldn't be fair, would it?

JUROR #41: No.

MS. KETTLER: Just like if you have a bad feeling about that case, it wouldn't be fair to consider that, would it?

JUROR #41: No.

MS. KETTLER: Okay, the Judge has mentioned to you that there are going to be two juries in this matter.   There will be some portions of the trial that your jury doesn't hear.   In other wards, there will be times when we'll just have one jury out her hearing evidence.   And I think the Judge will instruct you that that's not for you to consider why that is.   There are legal reasons for that.   But is there anybody in the panel that thinks they would have a hard time not, you know, speculating about what's going on out here if you're in the jury room?   Raise your hand if you think you'd be inclined to wonder and guess.   Okay, I see no hands.   For those of you who've been on jury duty before, raise your hand again quickly for me, please.   Thank you.   Ms. Shivers, anything about your experience on jury duty before that would affect your ability to be fair in this case?

JUROR #39: No.

35

MS. KETTLER: Okay, and would you consider this case on its own merits without comparing it to your other experience?

JUROR #39: Yes.

MS. KETTLER: Okay, and Ms. Bryant, how about you?

JUROR #39: Absolutely.

MS. KETTLER: Okay. Mr., sorry, I forgot already who the other, prior jurors? Ms. Jordan, would anything about your experience doing it before affect your ability to be a fair juror this time?

JUROR #23: No.

MS. KETTLER: Okay, and you would consider this case on its merits without comparing it to other cases?

JUROR #23: Yes.

MS. KETTLER: Okay, is that all of the prior jurors? Okay, thank you all very much for your candor. Thank you, Judge.

THE COURT: Mr. White.

MR. WHITE: Thank you your Honor. Members of the jury, I've got a few questions, too. For the same reason the prosecutor asked you questions, I'm going to ask you questions which is that we're not looking for a perfect jury, we're looking for a jury that's fair to both sides. The first I'll ask and I realize it's a little out of order, Mr. Vaughn, you were on a jury in a civil case, is that correct?

JUROR #41: No.

MR. WHITE: Oh, it was a criminal case?

JUROR #41: No, I wasn't on a jury. Which one of

36

you was on a civil jury?  Alright, moving right along then, the Judge explained to you and the prosecutor did, too, that crimes consist of elements and they're like a little checklist you'll get at the end of the trial of things that have to be proven to you beyond a reasonable doubt.  Now you've got to have every single one of those things proven to you beyond a reasonable doubt in order to make a conviction, you just don't have to have, you just are not allowed to have some total feeling of proof beyond a reasonable doubt.

Does everybody understand the difference?  If you don't understand the difference, raise your hands.  Alright, now the, normal criminal justice systems that most of you are familiar with because most of you are parents, are your children.  And if your two children come up and one of them says Tommy hit me, your normal response is to turn to Tommy and say what's your side of the story?  That's the justice system most of us deal with at home.

Now do you understand that one of the things different about this criminal case is that we do not have to present a defense, that we can just sit here.  I can sleep at the table, though I won't.  And it's up to the prosecution to prove beyond a reasonable doubt my client's guilty.  Is there anybody that doesn't understand that?  No hands are raised.  Is there anybody here who would have a hard time reaching a verdict of acquittal if they didn't hear Paula Bennett's side of the story?  If so,

37

please raise your hand.  No hands are raised.

Now it's been indicated to you that there are two defendants obviously.  One of them is a fellow by the name of Kyron Benson who you're going to come to know as the trial starts.  Now Kyron, I believe, is charged with shooting the victim, a lady named Stephanie McClure.  My client is charged with assisting him in some way.  Is there anybody here who could not separate their level of guilt if there's a trial.  In other wards, if it's obvious to you you're not trying Kyron Benson's case.  You're not his jury. But if it becomes obvious to all of you that he's guilty, is there anybody here who would have a problem with separating out her guilt and what she did or her innocense and what she didn't do from his? Is there anybody who'd have a problem with bleed over guilt? If so, raise your hands.  No hands are raised.

Now you've been told that in order to convict somebody you've got to be convinced beyond a reasonable doubt of their guilt and that that's the standard that you use.  Is anybody here who does not understand that equally important, your purpose is to find people who are innocent not guilty?  It's just as important as your role to find guilty people guilty as to not convict the innocent.  Is there anybody who doesn't understand that?  No hands are raised.

Now there was some talk of the whole idea of watching CSI and everything and one or two of you jurors mentioned it. Do you understand that some forms of scientific evidence you might

38

see on CSI are real life evidence?   Is there anybody who doesn't understand that?   Alright, do you understand that the Judge is going to determine what evidence is admissible at this trial? Is there anybody who doesn't understand that?   No hands are raised.

If evidence is presented at this trial, whether it's fingerprint evidence or footprint evidence or DNA evidence or ballistics evidence or whatever it is, that you're required to judge the evidence presented to you as to whether it helps to convince you beyond a reasonable doubt of guilt or fails to convince you because of lack of evidence.   Do you understand that?   If so, if you understand it, please raise your hands.   Do you understand that you've got to judge the evidence?   Please raise your hands. Alright, all hands are raised.

Now, there's been a mention of interracial dating. My client, Paula, here is white.   Her boyfriend, Kyron Benson, is black.   And there's been some discussion about people not having a problem with that.   The deceased in this case is a young, white female.   These are all very young people.   Kyron's young, my client here just turned eighteen.   These are all young people.   Stephanie McClure, the victim in this crime, was a young, white female, too.

So we've got an allegation that this young, black male killed this young, white female.   Is there anybody here who would find that sufficiently disturbing that it would you unable to be fair as to my client?   If so, please raise your hands.

Now, my client is, and I think the evidence is pretty

39

clear, my client's not charged with shooting anybody or killing anybody. She's charged with being an aider and abettor. And that's why you were read this instruction. And you all heard the Judge say that you've got to intentionally assist in the crime in order to be an aider and abettor. Is there anybody who doesn't understand the requirement to intentionally assist the crime? If so, please raise your hands.

Now, is there anybody here who does not understand that if you are merely present at a crime, that does not make you guilty of the crime? Is there anybody here who does not understand that, raise your hands? In fact, I think we're going to have one of the witnesses for the prosecution who was present who's not charged. And I'm assuming that the reason is –

THE COURT: Counsel, is there a question?

MS. KETTLER: I'm going to object.

THE COURT: Well I don't know if there's an objection, I just want to know if there's a question.

MR. WHITE: Sure, the question is that you understand that it's pretty, his presence was a reason, but lack of participation would be the reason he wouldn't be charged, you understand that?

MS. KETTLER: I'm going to object to –

THE COURT: Sustained.

MR. WHITE: Alright, I'll move along your Honor. Thank you. My final question, and this goes to all of you, you've

heard a little bit about the case.  If you were in my client's
position over here, do any of you know of any reason based on your
background, your knowledge, your attitudes or your experience why
you wouldn't want you to be on the jury judging this case?  If
any of you do, please raise your hands.  No hands are raised.
Thank you your Honor, I'm done.

        THE COURT: People pass for cause?

        MS. KETTLER: Yes your Honor.

        THE COURT: Defense pass for cause?

        MR. WHITE: I do.

        THE COURT: Challenges to the People.

        MS. KETTLER: Your Honor, the People would like to ask the
Court to thank and excuse juror number fourteen.

        THE COURT: Ms. Borczak, thank you.

        MS. KETTLER: As well as juror number twelve and juror number
nine.

        THE COURT: Mr. Dorn, thank you.   Mr. Chiu, thank you.

        THE CLERK: Jennifer Riley, R-I-L-E-Y, number nine.   Felecha
Garcia, first name, F-E-L-E-C-H-A, last name, G-A-R-C-I-A, seat number twelve.
Ireneah Savage, S-A-V-A-G-E, last name, pronounce the first name.

        JUROR #37: Irene.

        THE CLERK: And your last name.

        JUROR #37: Savage.

        THE CLERK: Thank you, seat number fourteen.

        THE COURT: Ms. Riley, what do you do for a living?

JUROR #34: I'm currently unemployed.

THE COURT: And what did you do for a living?

JUROR #34: Marketing.

THE COURT: Are you single or married?

JUROR #34: Married.

THE COURT: What does your husband do?

JUROR #34: He's a teacher.

THE COURT: What town do you live in?

JUROR #34: Southgate.

THE COURT: And can you be with us during the time I outlined?

JUROR #34: Yes.

THE COURT: Can you think of any reason that you would not be fair?

JUROR #34: No.

THE COURT: I, well both lawyers now and I first raised the issue of aiding and abetting. You understand that if the prosecutor proves beyond a reasonable doubt that the Defendant aided and abetted, and I've given you a definition of that, can you find the Defendant guilty of the crime charged if the prosecutor has proven that?

JUROR #34: Yes.

THE COURT: Can you agree with the principle that it doesn't matter how much help or aid or assistance that the Defendant gave?

JUROR #34: Yes.

THE COURT: Would you believe a police officer more than a civilian simply because they're a police officer? I asked it very fast, let me ask it

42

again.

JUROR #34: No, no, I got the question.  I was just thinking about that.  I don't think so.

THE COURT: Well, we have to have more than I don't think so. You understand that police make mistakes all the time.

JUROR #34: Right.

THE COURT: They're human beings, right?

JUROR #34: Right.

THE COURT: Present company excluded.  But you understand that you have to decide not only who's telling the truth but who's accurate in their description of what happened?

JUROR #34: Right.

THE COURT: Can you do thta?

JUROR #34: Yes.

THE COURT: Doesn't matter if they're a police or a civilian?

JUROR #34: Yes.

THE COURT: Okay, Ms. Garcia, what do you do for a living?

JUROR #13: I work in a packaging company.

THE COURT: I'm sorry?

JUROR #13: I work in a packaging company.

THE COURT: Are you single or married?

JUROR #13: Single.

THE COURT: What town do you live in?

JUROR #13: Lincoln Park.

THE COURT: And can you be with us during the time I outlined?

43

JUROR #13: It would be hard for me to stay up but yes.

THE COURT: It would be hard for you to stay up.  Why, you work nights?

JUROR #13: I work eleven to seven and I'm pretty tired.

THE COURT: Well I understand that but I need you from nine to one.   My question is can you be alert and awake and available for that time?

JUROR #13: I can be available.

THE COURT: Well let's try all my question.   Can you be alert, awake and available?

JUROR #13: I'd like to be excused.

THE COURT: I'm sorry?

JUROR #13: I said I'd like to be excused.

THE COURT: Why?

JUROR #13: Because I'm too tired and I'm moving and it's hard for me to stay awake.

THE COURT: I'll excuse you, go back to one.

THE CLERK: Antonio Kyser, seat number twelve.

THE COURT: Mr. Kyser, what do you do for a living?

JUROR #26: I have two jobs.   I'm a terminal manager for CHS Intermodul and I am a bouncer at the Emerald Ballroom in Mount Clemens.

THE COURT: Are you single or married?

JUROR #26: Single for right now.

THE COURT: And what town do you live in?

JUROR #26: Taylor.

THE COURT: Can you be with us during the time I outlined?

44

JUROR #26: Yes sir.

THE COURT: And would you believe a police officer more than a civilian simply because they're a police officer?

JUROR #26: No sir.

THE COURT: How long have you worked for the railroad?

JUROR #26: I've been there for approximately eight years.

THE COURT: And you understand the hours will be between the hours of nine and one.   Does that present a burden for you?

JUROR #26: No sir.

THE COURT: Can you think of any reason that you would not be fair?

JUROR #26: No sir.

THE COURT: And Ms. Savage, what do you do for a living?

JUROR #37: Currently I'm not working but I'm a graduate student at Wayne State University.

THE COURT: And what is it that you study?

JUROR #37: My MBA, Concentration Management.

THE COURT: Are you married or single?

JUROR #37: I'm single.

THE COURT: What town do you live in?

JUROR #37: Detroit.

THE COURT: Have you ever served on a jury before?

JUROR #37: Yes, numerous times.

THE COURT: Really?

JUROR #37: Yes.

45

THE COURT: How many times?

JUROR #37: This will be my fourth.

THE COURT: And were the juries all criminal?

JUROR #37: No.

THE COURT: So it was a mixture of civil and criminal?

JUROR #37: Yes.

THE COURT: Did you ever serve on a jury that did not reach a verdict?

JUROR #37: No.

THE COURT: Can you be with us during the time I outlined?

JUROR #37: It would be difficult due to my class schedule and I'm currently interviewing.

THE COURT: Well what is your class schedule?

JUROR #37: Well I start classes in approximately a week and also I'm interviewing -

THE COURT: Well let's get more specific.   When do you start a class?

JUROR #37: Monday.

THE COURT: Okay, and what time is the class?

JUROR #37: Class starts at 11:15 in the morning, from 11:15 to 1:30.

THE COURT: And this is the start of a term or semester?

JUROR #37: This is the start of a term.

THE COURT: I'll excuse you, you can go back to one.   Mr. Kyser, I didn't ask you this, have you ever served on a jury before?

46

JUROR #26: No sir.

THE COURT: And Ms. Riley, have you ever served on a jury before?

JUROR #34: No.

THE CLERK: Jennifer Rivett, R-I-V-E-T-T, pronounce your last name.

JUROR #35: Rivett.

THE CLERK: Thank you, seat number fourteen.

THE COURT: Ms. Rivett, what do you do for a living?

JUROR #35: I'm a registered nurse.

THE COURT: Single or married?

JUROR #35: Single.

THE COURT: And what town do you live in?

JUROR #35: Dearborn Heights.

THE COURT: Can you be with us during the time I outlined?

JUROR #35: Yes.

THE COURT: Can you think of any reason you would not be fair?

JUROR #35: No.

THE COURT: Have you ever served on a jury before?

JUROR #35: No.

THE COURT: Would you believe a police officer more than a civilian simply because they're a police officer?

JUROR #35: No.

THE COURT: Can you think of any reason you would not be

47

fair?

JUROR #35: No.

THE COURT: Questions for the People.

MS. KETTLER: Thank you your Honor.   Ms. Rivett, Mr. Kyser and Ms. Riley, these questions are geared towards you.   Have any of you ever been arrested for or charged with a crime, raise your hand?   Okay, Mr. Kyser, what, and I don't mean to pry but what was it?

JUROR #26: Driving with a suspended license on an unpaid ticket.

MS. KETTLER: Okay, do you think you were treated fairly by the police?

JUROR #26: I was treated excellent.   They let me drive my car to the police station, pay the fine and go on my merry way.

THE COURT: Lucky man.

MS. KETTLER: Okay, so nothing about that would affect your ability to be fair if you listen to police witnesses, is that right?

JUROR #26: That is correct.

MS. KETTLER: Okay, also for the same three of you, anybody, close friends or family members that you're aware of who've been arrested or, and/or charged with a crime?   Nobody?   Mr. Kyser?

JUROR #26: Not that I can recall.

MS. KETTLER: Okay, Ms. Rivett?   Ms. Riley, I need you to answer out loud, please.

JUROR #34: No.

MS. KETTLER: Okay.   How about, I'm sorry, did you answer

48

no?   Okay.   How about something less than that, not maybe charged with a crime but an unpleasant experience with the police no matter how minor?   Have you had any type of experience like that Ms. Riley?

    JUROR #34: No.

    MS. KETTLER: Mr. Kyser?

    JUROR #26: No.

    MS. KETTLER: Okay, Ms. Rivett?

    JUROR #35: No.

    MS. KETTLER: Okay, what about, same question only friend or family members of yours that you're aware of having unpleasant experiences with the police?   Anyone?   No, okay I see no hands.   By the way, have the three of you, did you get a chance to listen to the questions I covered with the other jurors?   Ms. Riley, Mr. Kyser, Ms. Rivett, you're all saying yes.   Okay, are there any of those questions that I asked before that you thought you know I would need to answer something about that?   Raise your hand if so.   I don't see anybody.   Mr. Kyser, let me ask you, do you think that some people maybe have strong influence over other people sometimes?

    JUROR #26: No.

    MS. KETTLER: Okay, you don't think some people are sometimes very persuasive with people they're in relationships with?

    JUROR #26: No.

    MS. KETTLER: Okay, what about you Ms. Rivett?

    JUROR #35: Yes.

    MS. KETTLER: Okay, what about you Ms. Riley?

    JUROR #34: Yes.

MS. KETTLER: Okay, and given that are the people who are being persuaded, are they nonetheless responsible for what they choose to do?   Do you agree with that?

JUROR #34: They are still responsible.

MS. KETTLER: Okay, what about you Ms. Rivett?

JUROR #35: Yes.

MS. KETTLER: And you heard the Judge talk about aiding and abetting.   Do you feel, Ms. Riley, that, first of all, do you think that's fair that that's the law that you can be held responsible for helping in the commission of a crime?

JUROR #35: Yes.

MS. KETTLER: Okay, and do you think that if you, do you think that if the assistance that an aider and abettor gives is much less than the person who actually say does the shooting, does that make you feel sorry for that person that they're charged with the same crime?

JUROR #34: No.

MS. KETTLER: Okay, what about you Mr. Kyser?

JUROR #26: No.

MS. KETTLER: Okay, what about you Ms. Rivett?

JUROR #35: No.

MS. KETTLER: Okay, so none of you would have difficulty if I prove beyond a reasonable doubt that Ms. Bennett assisted, only assisted knowingly in a first degree murder, you could nonetheless convict her even though she's not the one that pulled the trigger?   Is that true Ms. Riley?

JUROR #34: Yes.

MS. KETTLER: Mr. Kyser?

50

JUROR #26: Yes.

MS. KETTLER: Okay, Ms. Rivett?

JUROR #35: Yes.

MS. KETTLER: Any of the three of you have very strong feelings about interracial dating?   Okay, what are your feelings?

JUROR #26: Well my future wife is white.

MS. KETTLER: Alright, so you don't have a problem with it?

JUROR #26: None.

MS. KETTLER: And people are responsible for what they do no matter who they choose to date, would you agree with that?

JUROR #26: Yes.

MS. KETTLER: Okay.   The Judge has instructed you that my job is to prove the elements, each of elements of the crime beyond a reasonable doubt.   Let me ask you, Ms. Riley, to assume that you're picked for this jury and you go back in that back room and you believe that I have proven the elements beyond a reasonable doubt.   Does that mean that every single question you may have will be answered?   Is that required to prove something beyond a reasonable doubt?

JUROR #34: No, not beyond a reasonable doubt.

MS. KETTLER: Okay, because there might be questions that aren't related to elements correct?

JUROR #34: Correct.

MS. KETTLER: Okay, what about you, Mr. Kyser, do you think that necessarily means every question you have about this situation would be answered?

JUROR #26: No.

51

MS. KETTLER: Okay, what about you, Ms. Rivett?

JUROR #35: No.

MS. KETTLER: Okay, CSI, etc., I'm not going to go through the whole thing but is there anybody who thinks it would be too difficult for them to put what they've seen on tv out of their mind if they're a juror in this case?  Okay, I see all three of the new jurors shaking their heads in the negative.  Oh, do you think you're a good judge of credibility, Mr. Kyser?

JUROR #26: Yes.

MS. KETTLER: Okay, is that a skill you use in your job?

JUROR #26: Yes.

MS. KETTLER: Okay, what about you, Ms. Riley?

JUROR #34: I think I'm probably average.

MS. KETTLER: Okay, some people are a little gullible, would you agree?

JUROR #34: Right.

MS. KETTLER: You're not gullible, just average?

JUROR #34: Right, I'm not gullible, but average.

MS. KETTLER: What about you, Ms. Rivett?

JUROR #35: I'm average.

MS. KETTLER: Okay, oh, any of the three of you think it would be impossible for you to refrain from discussing with your significant others the case until it's over?

MS. KETTLER: No, Mr. Kyser?

JUROR #26: No.

MS. KETTLER: Okay, thank you all very much.  Thank you,

52

Judge.

THE COURT: Mr. White.

MR. WHITE: And this is directed towards the three new jurors. Have any of you ever been the victim of a violet crime?   If so, please raise your hand.   No hands are raised.   Have any of you got close family members or close friends who have been the victim of a violent crime?   Alright, could you tell us about that, please?

JUROR #35: I'm really close family friends, from Livonia, there was a grandma, a father and two children all murdered in their home.

MR. WHITE: They were murdered in their home?   Alright and the charge in this case is murder obviously.   Do you think that because of the nature of that charge and because of your personal exposure to those people that you would have difficulty being fair in this particular case?

JUROR #35: No.

MR. WHITE: You don't think that would affect you?

JUROR #35: No.

MR. WHITE: Thank you ma'am.

THE COURT: Ma'am, you have to have a response.

JUROR #35: I said no.

THE COURT: You might have said no but I didn't hear you.   You shook your head and that's what I saw.

MR. WHITE: I don't have any more questions for you.

THE COURT: People pass for cause?

MS. KETTLER: Yes your Honor.

THE COURT: Defense pass for cause?

53

MR. WHITE: Pass for cause.

THE COURT: Challenges to the defense.

MR. WHITE: Your Honor, I would thank and excuse Ms. Riley. And I would thank and excuse Ms. Rivett.

THE COURT: Ms. Riley and Ms. Rivett, thank you.

THE CLERK: Rakesh Hora, H-O-R-A, last name.   Pronounce your name, sir.

JUROR #21: Hora.

THE CLERK: And your first name.

JUROR #21: Rakesh.

THE CLERK: R-A-K-E-S-H, seat number nine, thank you.   Julia Garvin, seat number fourteen.

THE COURT: Mr. Hora, what do you do for a living?

JUROR #21: Excuse me, sir?

THE COURT: What do you do for a living.

JUROR #21: I'm a IT manager.

THE COURT: Married or single?

JUROR #21: Excuse me?

THE COURT: Married or single?

JUROR #21: Married.

THE COURT: Are you having trouble hearing me?

JUROR #21: Yes, I wear a hearing aid in both ears.

THE COURT: So have you been able to hear what's been going on in the court?

JUROR #21: Honestly, when you're close to the mic, I've heard

54

whatever you said on the mic.   When you're away from the mic, I'm not picking it up. I pick up about eighty percent because I can pick up high tone first.   And about fifty percent of the defense attorney.

THE COURT: I'll excuse you, you can go back to one.

JUROR #21: Thank you.

THE CLERK: Christopher Flynn, F-L-Y-N-N, seat number nine.

THE COURT: Ms. Garvin, what do you do for a living?

JUROR #14: I bartend.

THE COURT: Are you single or married?

JUROR #14: Single.

THE COURT: What town do you live in?

JUROR #14: Harper Woods.

THE COURT: Have you ever served on a jury before?

JUROR #14: Yes.

THE COURT: I'm sorry?

JUROR #14: Yes, I have.

THE COURT: How long ago, ma'am?

JUROR #14: Seven, six, seven years.

THE COURT: And was it a civil or criminal case?

JUROR #14: Criminal.

THE COURT: Did the jury reach a verdict?

JUROR #14: I was excused at the end.

THE COURT: Can you be with us during the time I outlined?

JUROR #14: Yes.

THE COURT: Can you think of any reason that you would not be

55

fair?

> JUROR #14: No.

> THE COURT: Does the fact that the Defendant is a young person have any effect on what would be or could be a verdict in your, in regard to this case?

> JUROR #14: No.

> THE COURT: Mr. Flynn, what do you do for a living?

> JUROR #12: Financial rep.

> THE COURT: Single or married?

> JUROR #12: Married.

> THE COURT: What does your wife do?

> JUROR #12: She's a tennis instructor.

> THE COURT: And are, what town do you live in?

> JUROR #12: Grosse Pointe Park.

> THE COURT: Can you be with us during the time   I outlined?

> JUROR #12: I have a problem with Monday and Tuesday.  I have a compliance meeting that comes around in Detroit every two years.  And I must attend from eight to five.

> THE COURT: I'll excuse you.   You can go back to one.

> THE CLERK: Gary Kersten, K-E-R-S-T-E-N.

> JUROR #24: Kersten.

> THE CLERK: Thank you, seat number nine.

> THE COURT: Mr. Kersten, what do you do for a living?

> JUROR #24: I'm in sales.

> THE COURT: Are you married or single?

56

JUROR #24: Married.

THE COURT: What does your wife do?

JUROR #24: She works in sales also.

THE COURT: And what town do you live in?

JUROR #24: Grosse Pointe.

THE COURT: Have you ever served on a jury?

JUROR #24: No.

THE COURT: Would you believe a police officer more than a civilian simply because they're a police officer?

JUROR #24: No.

THE COURT: Can you follow the law that is known as aiding and abetting?

JUROR #24: Yes.

THE COURT: Can you be with us during the time I outlined?

JUROR #24: Yes.

THE COURT: Can you think of any reason you would not be fair?

JUROR #24: No.

THE COURT: Questions, Ms. Kettler, for Ms. Garvin and Mr. Kersten, go ahead.

MS. KETTLER: Thank you your Honor.  Mr. Kersten, have you ever been charged with or convicted of a crime?

JUROR #24: No.

MS. KETTLER: Are you aware of anyone in your family or of any friends who have been either charged, arrested, convicted of a crime?

JUROR #24: Not that I know of.

MS. KETTLER: Okay, anything less than that, unpleasant experiences with the police or the criminal justice system in any way, yourself?

JUROR #24: No.

MS. KETTLER: Aware of any friends or family members?

JUROR #24: No.

MS. KETTLER: Okay, Ms. Garvin, what about you?   Any unpleasant experiences with the police?

JUROR #14: No.

MS. KETTLER: Okay, you said you've been a juror before, right? You have to answer out loud.

JUROR #14: Yes.

MS. KETTLER: Okay, would you consider this case without comparing it to the other case you've had as a juror?

JUROR #14: I would not compare.

MS. KETTLER: Okay, and you are a bartender, correct?

JUROR #14: Right.

MS. KETTLER: Do you think that you're a good, you deal with people a lot in that, I'm sure, seeing them at their best and worst.   And do you think that you're a good judge of whether people are telling the truth or not?

JUROR #14: Yes.

MS. KETTLER: Okay, what about you Mr. Kersten, do you think you're a good judge of that?

JUROR #24: Yes.

MS. KETTLER: Okay, and you've had, you said, no unpleasant experiences at all with the police or criminal justice system, is that right?

58

JUROR #14: I've been arrested before.

MS. KETTLER: Okay, what have you been arrested for and I don't mean to pry.

JUROR #14: Drunk driving.

MS. KETTLER: Okay, do you think that you were treated fairly?

JUROR #14: Yes.

MS. KETTLER: Okay, do you think that would affect your ability to be fair in this case at all?

JUROR #14: No.

MS. KETTLER: Okay, anything else, friends or family members ever accused of a crime or arrested?

JUROR #14: Yes.

MS. KETTLER: Okay, more than one?

JUROR #14: No.

MS. KETTLER: Okay, do you think that other person, what was their relationship to you?

JUROR #14: A friend.

MS. KETTLER: Okay, do you think that person was treated fairley?

JUROR #14: Yes.

MS. KETTLER: Okay, and would that affect your ability to be fair and impartial at all in this case?

JUROR #14: No.

MS. KETTLER: Okay. Do you have any strong feelings about interracial dating?

59

JUROR #14: No.

MS. KETTLER: Do you think it's bound to cause problems?

JUROR #14: No.

MS. KETTLER: Do you have any thoughts about whether black men maybe treat white women differently than black women?

JUROR #14: No.

MS. KETTLER: Okay, what about you, Mr. Kersten?  Would you agree with me that people are responsible for their actions even if people have a lot of influence over them?

JUROR #24: Yes.

MS. KETTLER: Do you agree with that?

JUROR #14: Yes.

MS. KETTLER: Okay.  Have you ever known somebody, Ms. Garvin, in your life, a woman, who maybe stayed with or kept returning to a man who treated her poorly?

JUROR #14: Yes.

MS. KETTLER: Do you think that showed good judgment on her part?

JUROR #14: No.

MS. KETTLER: Okay, despite the fact that she showed poor judgment, do you think that she is still responsible for the consequences of her decision?

JUROR #14: Yes.

MS. KETTLER: And the consequences of her actions?

JUROR #14: Yes.

60

MS. KETTLER: If you hear evidence like that, do you think that you will feel sorry for this young lady and maybe want to give her a break?

JUROR #14: No.

MS. KETTLER: Okay, what about you, Mr. Kersten?

JUROR #24:  No.

MS. KETTLER: Okay.  Either of you think it would be difficult for you to not talk to your significant others about this case until it's over?  Can you do that, Mr. Kersten?

JUROR #24: Yes.

MS. KETTLER: Okay, and also the Judge has indicted to you, I think, that there's going to be another jury.  There will be times when maybe the other jury will hear things that you won't hear.  You may be in the jury room.  I think the Judge will instruct you not to concern yourself with that, only to consider the evidence you hear and not speculate about other things.  Will that be difficult for you, Mr. Kersten?

JUROR #24: No.

MS. KETTLER: What about you, Ms. Garvin?

JUROR #14: No.

MS. KETTLER: Okay.  Mr. Kersten, if you're picked for this jury and you go back in that room and you believe that I have proven beyond a reasonable doubt each and every element of this crime, do you think that means that every question you have about this situation must be answered?

JUROR #24: No.

MS. KETTLER: Okay, what about you, Ms. Garvin?

JUROR #14: No.

61

MS. KETTLER: If you go back in that jury room and you believe that I've proven each of the elements of the crime beyond a reasonable doubt, can you convict that person?

JUROR #14: Yes.

MS. KETTLER: Even if maybe you have questions about other things that aren't answered, things that aren't elements?

JUROR #14: Yes.

MS. KETTLER: Okay, so it doesn't necessarily mean for proof beyond a reasonable doubt to you doesn't necessarily mean all your questions have to be answered, is that correct?

JUROR #14: Yes.

MS. KETTLER: Okay, thank you all.   Thank you, Judge.

THE COURT: Mr. White.

MR. WHITE: Do you both of you new jurors, do you understand that if even one element of the crime is not proven beyond a reasonable doubt, you have a duty to find my client not guilty.   Do you understand that Mr. Kersten?

JUROR #24: Yes.

MR. WHITE: Ms. Garvin?

JUROR #14: Yes.

MR. WHITE: Now can you follow that instruction?

JUROR #24: Yes.

JUROR #14: Yes.

MR. WHITE: I have nothing more, thank you.

THE COURT: People pass for cause?

MS. KETTLER: We do.

62

THE COURT: Defense pass for cause?

MR. WHITE: We do.

THE COURT: Challenges to the People?

MS. KETTLER: The People would like to thank and excuse juror number five, Mr. Miekstyn.

THE COURT: Thank you.

THE CLERK: Maureen, I'll spell your last name, A-N-T-A-L.

THE COURT: Ms. Antal, what do you do for a living?

JUROR #1: I'm an engineer at Ford Motor Company.

THE COURT: Single or married?

JUROR #1: I'm married.

THE COURT: What does your husband do?

JUROR #1: He's an engineer and manager at Ford as well.

THE COURT: And do you work for him?

JUROR #1: No, I don't.

THE COURT: Good thing.

JUROR #1: Yes.

THE COURT: What town do you live in?

JUROR #1: Canton.

THE COURT: Have you ever served on a jury before?

JUROR #1: No, I have not.

THE COURT: Can you be with us during the time I outlined?

JUROR #1: I may have an issue. I have three small children and I do not have care for them on Monday and Wednesday morning. I do work part time but those two days I don't work. I have a one and a half year-old, a three

63

year-old -

THE COURT: Well when you say you may have an issue, are you saying that you cannot or you will look into getting alternative care.

JUROR #1: I can look into but I don't have a good alternate so I don't, I don't think I can be here.  It would be a longshot if I could find someone to watch the children.

THE COURT: I'll excuse you, you can go back to one.

THE CLERK: Shelby Dupuie.

JUROR #11: Dupuie.

THE CLERK: Thank you, that's D-U-P-U-I-E.

JUROR #11: Correct.

THE CLERK: Seat number five.

THE COURT: Ms. Dupuie, what do you do for a living?

JUROR #11: I just started a job as a cafeteria assistant at an elementary school.

THE COURT: Are you married or single?

JUROR #11: Married.

THE COURT: What does your husband do?

JUROR #11: He's a computer tech.

THE COURT: Can you be with us during the time I outlined?

JUROR #11: As I just stated, I just started this job and -

THE COURT: And?

JUROR #11: I applied for it back in December.

THE COURT: And?

JUROR #11: I just started it last week.

64

THE   COURT:  You're  not  suggesting  that  they  would disadvantage you in your employment -

JUROR #11: No, I -

THE COURT: Hang on, if you served on this jury, are you?

JUROR #11: No.

THE COURT: Because then they would answer to someone, not you, you understand that?

JUROR #11: Yes.

THE COURT: What town do you live in?

JUROR #11: Grosse Ile.

THE COURT: And can you be fair?

JUROR #11: Yes.

THE COURT: Questions for the People.

MS. KETTLER: Thank you, ma'am, do you think you're a good judge of when people are telling the truth?

JUROR #11: I have a nine year-old so -

MS. KETTLER: So, yes?   Okay, has either, I'm going to ask you a question and I'm going to ask you this with regard to yourself or close friends or family members.   Any of those people ever charged, arrested or charged with a crime?

JUROR #11: Yes.

MS. KETTLER: Okay, who would that be?

JUROR #11: My brother.

MS. KETTLER: Okay, and what was the nature of that crime?

JUROR #11: Child molestation.

65

MS. KETTLER: Okay, I apologize, it's not my, I don't mean to intrude.   Do he think he was treated fairly?

JUROR #11: Yes.

MS. KETTLER: Okay, you hesitated a little bit.

JUROR #11: I wasn't really involved.

MS. KETTLER: Okay, based on what you know, do you think he was treated fairly?

JUROR #11: Yes.

MS. KETTLER: Do you think that as a result of that, I mean he's your brother, do you have any bad feelings about police or prosecutors or judges?

JUROR #11: No.

MS. KETTLER: Okay, so you wouldn't hold that against me or anyone in this case, is that right?

JUROR #11: Correct.

MS. KETTLER: Do you have any strong feelings about interracial dating?

JUROR #11: No.

MS. KETTLER: Do you think that, have you known people in your life, women, who have stayed with men who treated them poorly?

JUROR #11: Yes.

MS. KETTLER: And do you think that that woman was nonetheless, well, did you feel sorry for her?

JUROR #11: No.

MS. KETTLER: Okay, so you believe that she's responsible for the choices she makes and the actions she takes, is that right?

JUROR #11: Yes.

MS. KETTLER: Okay, do you watch these crime television shows?

JUROR #11: No.

MS. KETTLER: Okay.  Do you think it would be hard for you, I'm sorry, did you say you're married?

JUROR #11: Yes.

MS. KETTLER: Okay, would it be hard for you not to talk to your husband about this case?

JUROR #11: No.

MS. KETTLER: Okay, and can you put it out of your mind and not be concerned with what's happening with the other jury and can you focus only on the evidence in this case and this Defendant?

JUROR #11: Yes.

MS. KETTLER: Any reason at all that if I prove all the elements beyond a reasonable doubt you would not be able to vote to convict this young lady?

JUROR #11: I'm sorry, could you repeat that.

MS. KETTLER: If I prove all of the elements of the crime that's charged beyond a reasonable doubt, can you convict this young lady?

JUROR #11: Yes.

MS. KETTLER: Okay, thank you, nothing further.

THE COURT: Mr. White.

MR. WHITE: I may have misheard, the acoustics are a little bit bad at my side of the courtroom.  Ms. Dupuie, did you indicate you had a problem with interracial dating?

67

JUROR #11: No.

MR. WHITE: Oh, you said you did not?

JUROR #11: Correct.

MR. WHITE: Alright, that was all I had.

THE COURT: People pass for cause?

MS. KETTLER: Yes your Honor.

THE COURT: Defendant pass for cause?

MR. WHITE: Pass for cause.

THE COURT: Challenges to the Defendant.

MR. WHITE: Your Honor, I would thank and excuse Ms. Dupuie, number five and Ms. Jordan, number seven.

THE COURT: Ms. Dupuie, Ms. Jordan, thank you.

THE CLERK: Dennise Johnson, seat number five.   Patty Murie, M-U-R-I-E, pronounce your last name.

JUROR #31: Murie.

THE CLERK: Thank you.

THE COURT: Ms. Johnson, what do you do for a living?

JUROR #22: Occupational Therapist.

THE COURT: Married or single?

JUROR #22: Single.

THE COURT: What town do you live in?

JUROR #22: Detroit.

THE COURT: Can you be with us during the time I outlined?

JUROR #22: Yes.

THE COURT: Can you think of any reason that you would not be

68

fair?

JUROR #22: No.

THE COURT: Ms. Murie, what do you do for a living?

JUROR #31: I own an antique shop.

THE COURT: Single or married?

JUROR #31: Married.

THE COURT: What does your husband do?

JUROR #31: We work together.

THE COURT: What town do you live in?

JUROR #31: Detroit.

THE COURT: Can you be with us during the time I outlined?

JUROR #31: Yes.

THE COURT: Can you think of any reason you would not be

fair?

JUROR #31: No.

THE COURT: Now I'll limit the lawyers to summing up questions.

For the People.

MS. KETTLER: Okay.  Ms. Johnson, do you have any strong feelings about interracial dating?

JUROR #22: I wouldn't want it for my children.

MS. KETTLER: Okay, do you think that people are responsible for what they do even if they're allegedly under someone else's influence?

JUROR #22: Yes.

MS. KETTLER: Can you put, if you hear evidence in this case that this young lady was dating a young black man, can you put that out of your mind

69

and not allow your feelings about that to impact on your decision in this case?

JUROR #22: Yes.

MS. KETTLER: Okay.   Any reason at all you can't be a fair juror in this case?

JUROR #22: No.

MS. KETTLER: Think you're good at telling if people are telling the truth or not?

JUROR #22: Most of the time.

MS. KETTLER: Okay.   Ms. Murie, what about you, any strong feelings about interracial dating?

JUROR #31: No.

MS. KETTLER: Okay, do you think you can be a fair juror in this case.   I'm sorry, anybody in your family, any unpleasant experiences with the police that you're aware of, ma'am?

JUROR #22: I know my son is always being stopped when he's driving through different towns.

MS. KETTLER: Okay, and obviously that's not fair, right?

JUROR #22: Right.

THE COURT: Well counsel, I'll -

MS. KETTLER: I'll rephrase, do you think he's been treated unfairly?

JUROR #22: I think it's arbitrary.

MS. KETTLER: Okay, do you think you could put that out of your mind in deciding this case?

JUROR #22: Yes.

70

MS. KETTLER: Okay, Ms. Murie, what about you, anybody in your family have unpleasant -

JUROR #22: No.

MS. KETTLER: Okay, nothing further, thank you.

THE COURT: Mr. White.

MR. WHITE: I have no questions.

THE COURT: People pass for cause?

MS. KETTLER: Pass for cause.

THE COURT: Defense pass for cause?

MR. WHITE: Pass for cause.

THE COURT: Challenges to the People?

MS. KETTLER: No, thank you your Honor.

THE COURT: Challenges to the Defense?

MR. WHITE: I would thank and excuse Ms. Johnson, please.

THE COURT: Ms. Johnson, thank you very much.

THE CLERK: Jamie Graham, seat number five.

THE COURT: Ms. Graham, what do you do for a living?

JUROR #17: I'm a sales assistant.

THE COURT: Are you married or single?

JUROR #17: Single.

THE COURT: What town do you live in?

JUROR #17: Northville Township.

THE COURT: Have you ever served on a, did you say Northville Township.

JUROR #17: Yes.

71

THE COURT: I hate to ask this but it happened to me in a recent trial.   Which side of Eight Mile do you live on?

JUROR #17: It would be the south.

THE COURT: So Wayne County side?

JUROR #17: Yes.

THE COURT: Incredibly, I had a juror who told me she lived in Northville Township but forgot to tell me she didn't live in Wayne County.   And we spent six and a half weeks of the most boring, most boring property condemnation trial you have ever heard.   And now somebody has to do it all over again.   Alright, so you live in Wayne County?

JUROR #17: Yes.

THE COURT: Can you be with us during the time I outlined?

JUROR #17: Yes.

THE COURT: Can you think of any reason you would not be fair?

JUROR #17: No.

THE COURT: Okay, I'm going to take over the lawyer's questioning in this regard.   You've heard the questions from Ms. Kettler, correct?

JUROR #17: Yes.

THE COURT:   Over and over?

JUROR #17: Yes.

THE COURT: And over and over.   Now, thinking about her questions, do those questions prompt you to give any answers, same, different variances, doesn't matter to me, but do those questions prompt any answers from you?

72

JUROR #17: No.

THE COURT: Same question about Mr. White.  You've heard Mr. White's questions.  Do you have any answers to his questions, the same, different or a variation of anything else you heard?

JUROR #17: No.

THE COURT: People pass for cause?

MS. KETTLER: Yes your Honor.

THE COURT: Defense pass for cause?

MR. WHITE: Yes your Honor.

THE COURT: Challenges to the People?

MS. KETTLER: Not at this time your Honor.

THE COURT: Challenges to the Defendant.

MR. WHITE: I'm satisfied, I think we have a jury.

THE COURT: Thank you.  Ladies and gentlemen, thank you. You can return to the first floor.  And you just hold tight.  I'll only need you for five more minutes and then I'll send you on your way.  Let me begin by telling you that we'll begin the trial tomorrow morning at nine o'clock.  That's, the first thing that will happen is you'll be sworn as the jury to try the case.  So the last thing you must do before you leave is to fill out a paper for my eyes only to give me your latest cell phone, land line, global positioning device, IPOD, Raspberry, Blackberry, however anybody contacts you because you will also have a number from my side to contact this Court if an emergency arises.  Do not take it upon yourself to excuse yourself from jury duty.  Only I will excuse whoever does have such an emergency. Someone is here after seven.  I'm here that early but I can't answer the phone because I can't have any personal contact with you but somebody will convey a

73

message to me if an emergency arises on your end.   And then I will decide what to do about it.

I will now explain some of the legal principles you need to know and the procedures to be followed in this trial.   The prosecutor will make an opening statement where she gives her theories of the case.   The Defendant's lawyer does not have to make an opening statement but he may make an opening statement after the prosecutor makes hers or he may wait until later.   These statements are not evidence.   They are only meant to help you understand how each side views the case.

Next, the prosecutor presents her evidence.   She may call witnesses to testify and may show you exhibits such as documents or objects. Defendant's lawyer has the right to cross examine prosecutor witnesses.   After the prosecutor has presented all her evidence, the Defendant's attorney may also offer evidence but does not have to.   By law, the Defendant does not have to prove her innocence or produce any evidence.   If the Defense does call witnesses, the prosecutor has the right to cross examine them.   Then the prosecutor may also call witnesses to contradict the testimony of the defense witnesses.

After all the evidence has been presented, the prosecutor and defendant's lawyer will make closing arguments.   Like opening statements, these are not evidence but are only meant to help you understand the evidence and the way each side views the case.   You must base your verdict solely on the evidence. My responsibility as the judge in the trial is to be sure the trial is run fairly and efficiently, to make decisions about evidence and instruct you about the law that applies in the case.

You must take the law as I give it to you.   Nothing I say is meant

74

to reflect my own opinions about the facts in the case.   As jurors, you are the ones who will decide the case.   Your responsibility as jurors is to decide the facts of the case.   This is your job and no one else's.   You must thing about all the evidence and all the testimony and then decide what each piece of evidence means and how important you think it is.   This includes how much you believe what each of the witnesses said.   What you decide about any fact in the case is final.

When it is time to decide the case, you are only permitted to consider the evidence admitted in the case.   Evidence includes only the sworn testimony of witnesses, exhibits admitted into evidence and anything else I tell you to consider as evidence.   When you decide the case, you decide the witnesses you believe and how important you think their testimony is.   You do not have to believe or accept everything a witness said.   You are free to believe all, none or part of any person's testimony.

So in deciding the testimony you believe rely on common sense and everyday experience.   However, in deciding whether you believe a witness's testimony, set aside any bias or prejudice you may have based on race, gender or national origin of the witness.   There is no fixed set of rules for judging whether you believe a witness.   But it may help you think about these questions.   Was the witness able to see or hear clearly?   How long was the witness watching or listening?   Was anything else going on that may have distracted the witness?   Does the witness have a good memory?

How does the witness look and act while testifying?   Does the witness make an honest effort to tell the truth or does the witness seem to evade questions or argue with the lawyers?   Does the witness's age or maturity affect how you judge his or her testimony?   Does the witness have any bias or prejudice or

personal interest in how the case is decided?   Have there been promises, threats, suggestions or other influences that affect how the witness testifies?   In general, does the witness have any special reason to tell the truth or any special reason to lie?   All in all, how reasonable does the witness's testimony seem when you think about all the other evidence in the case?

Questions lawyers ask witnesses are not evidence.   Only answers are evidence.   You should not think something is true because one of the lawyers ask questions that assume or suggest it is true.   During the trial, the lawyers may object to certain questions or answers made to questions. I will rule on their objections according to the law.   My rulings for or against one side or the other are not meant to reflect my opinion about how you should decide the facts in the case.

Sometimes the lawyers and I will have discussions out of your hearing.   Pay no attention to these interruptions. Do not discuss the case with anyone including family or friends.   Do not even discuss it with other members of the jury until I tell you to go to the jury room to begin your deliberations.   And then, only discuss the case in the jury room and only when all members of the jury are present.  When the trial is over, you may if you wish discuss the case with anyone.

During recesses of the Court, do not let anyone discuss the case with you or in your presence.   If anyone does try to do that, tell him or her to stop. Tell them that you are on the jury hearing the case and you are not permitted to discuss the case.   If they do not stop, leave their presence and report the incident to me as soon as you return to Court.   Do not talk with the Defendant, the lawyers or witnesses about anything at all even if it has nothing to do with the case.   It is very important you only get information about the case when you are acting as the jury and when the Defendant and lawyers and I are all present.

76

We have chosen a jury of fourteen. At the close of the proofs, final argument and my instructions on the law, we will select by lot two of you who will be excused in order to form a jury of twelve. Do not go to the scene of the alleged crime. Do not investigate anything about the case on your own or make any experiments. Do not take notes while you are here in Court. If you are taking notes, you may not give your attention to the evidence as it is being presented.

Possible penalty should not influence your decision. It is my duty to fix penalty within the limits provided by law if the Defendant is convicted of anything. I will give you detailed instructions at the close of the case. You are to consider all my instructions as a connected series. Taken together, my instructions are the law that you must follow. Then you will go to the jury room to deliberate and decide upon your verdict.

A verdict in a criminal case must be unanimous. That means each juror must agree with it and it must represent the individual considered judgment of each juror. Keep an open mind and do not make a decision about anything in the case until you go to the jury room to decide upon the case and reach your verdict. Ladies and gentlemen, that concludes my opening instructions. Please step into the jury room. When you return tomorrow, it will be to be sworn as the jury and for opening statements.

(Whereupon the jury left the Courtroom at 11:39 a.m.)

-  -  -

(On the record without the jury)

THE COURT: Counsel, approach. I called the lawyers to the stand because we have to set forth the terms of the People's Offer for Resolution of the case to Ms. Bennett and then, well, first let me hear from Ms. Kettler.

77

MS. KETTLER: Judge, we have had discussions about a possible resolution of this case since the very beginning of it. We had a proper session with Ms. Bennett and her counsel and ongoing sessions. The upshot of it is is that we have offered Ms. Bennett, having heard her rendition of what happened, we've made her an offer of fifteen years. We would have negotiated the tail. I made that offer to her despite the fact that -

THE COURT: You mean the maximum?

MS. KETTLER: Minimum of fifteen. The tail we can negotiate.

THE COURT: Alright. Well, it has to be a third beyond the -

MS. KETTLER: Correct.

MR. WHITE: Right.

THE COURT: Go ahead.

MS. KETTLER: And I'm not concerned about that end being real high. I have allowed that offer to remain open to her despite the fact that our case has improved exponentially with taking a statement from another individual who was present at the scene. It's my understanding that she's rejecting that resolution. That offer includes truthful testimony against the co-defendant.

THE COURT: Mr. White.

MR. WHITE: Your Honor, I would note that I have had discussions with Ms. Kettler. I have conveyed the result of those discussions to my client. I indicated to her that the discovery I received last week made the prosecutor's case significantly stronger than I felt it had been previously. I explained what the consequences of an offer would be, the consequences of a trial, both if she was acquitted and if she was convicted of the charge before the Court. And she indicated to me that she wanted to go to trial. Perhaps she can talk to the Court.

THE COURT: And you are Paula Bennett?

MS. BENNETT: Yes.

THE COURT: And Ms. Bennett, you've heard this discussion that's gone on in front of me just now?

MS. BENNETT: Yes.

THE COURT: And you reject the offer of a fifteen year minimum for your participation in this crime?

MS. BENNETT: Yes.

THE COURT: Ms. Bennett, you understand if you are convicted of first degree murder, the penalty is a maximum of life in prison without parole?

MS. BENNETT: Yes.

THE COURT: And you also understand that in the legal instructions, I will give the jury the option to find you guilty of second degree murder, you understand that?

MS. BENNETT: Yes.

THE COURT: If you are found guilty of second degree murder, it is very likely that I will send you to far more than fifteen years, you understand that?

MS. BENNETT: Yes.

THE COURT: And with all that in mind, you wish to reject the prosecutor's offer?

MS. BENNETT: Yes.

THE COURT: See you tomorrow.

MR. WHITE: Thank you.

(Matter concluded and Court was recessed)

STATE OF MICHIGAN )

COUNTY OF WAYNE     )


I, Jeffrey B. Goldsmith, Official Court Reporter for the Third Judicial Circuit of Michigan, do hereby certify that I reported the foregoing proceedings before the Honorable

MICHAEL J. CALLAHAN, Circuit Judge on May 7, 2008; that the foregoing 89 pages constitute a true and correct transcript of the proceedings so held.




_____
Official Court Reporter
CSMR-0037